OPINION OF THE COURT
Vincent R. Balletta, J.
This is an article 78 proceeding commenced on behalf of two individuals who are currently in the Nassau County Medical Center. The petitioner alleges that both are being held illegally in violation of the appropriate sections of the Mental Hygiene Law. The petitioner further alleges that these individuals are not suffering from a mental illness, but rather in fact are suffering from mental retardation.
In his petition, the petitioner points out to the court the appropriate sections of the Mental Hygiene Law which set forth the policy of the State of New York with regard to mental retardation. (Mental Hygiene Law, § 13.01.) Petitioner further sets forth the mandate of the Mental Hygiene Law in subdivision (c) of section 13.07 which states that: "The office shall have the responsibility for seeing that mentally retarded and developmentally disabled persons specified in the foregoing subdivision are provided with care and treatment, that such care and treatment is of high quality and effectiveness, and that the personal and civil rights of persons receiving care and treatment are adequately protected.”
Petitioner alleges that on numerous occasions demands have been made to the various respondents to remove these two individual patients from the Nassau County Medical Center and to an appropriate facility capable of caring for the mentally retarded.
In answering the petition, those respondents represented by *43 the Attorney-General of the State of New York deny pertinent portions of the petition. The answer of the respondents represented by the County Attorney of the County of Nassau is similar. More particularly, they deny that the individuals are suffering from mental retardation, they deny that demands have been made upon the respondents to remove the patients, they deny that applications have been made to the Suffolk Developmental Center on behalf of both patients, they deny that any of their actions are arbitrary or capricious and constitute abuses of discretion.
In the nature of affirmative defenses, the New York State respondents allege: (1) petitioner is without authority to make this application; (2) the petition fails to state a cause of action in that no allegation is made that the two patients are in need of care and treatment and neither patient requires such care and treatment in the developmental center; (3) respondents are co-operating and will continue to co-operate with the appropriate Nassau County medical personnel to find appropriate community placement for the two individuals involved; and (4) respondents have not been arbitrary, capricious or unreasonable in declining to admit the patients to Suffolk Developmental Center in that the Suffolk Developmental Center is significantly overpopulated.
On the return date of this petition, numerous papers were submitted to the court in the nature of copies of letters, progress notes, and various reports concerning the subject patients. These papers will be deemed marked as court Exhibit "A” in connection with this proceeding.
In establishing an affirmative defense, the party raising said defense has the burden of proof. (Conner v Keese, 105 NY 643; 21 NY Jur, Evidence, § 150.) In examining the affirmative defenses raised by the New York State respondents, the court finds as follows: that with respect to the first affirmative defense, pursuant to section 29.09 (subd [b], par 5) of the Mental Hygiene Law, the petitioner Mental Health Information Service is directed to "take any legal action deemed necessary to safeguard the right of any patient to protection from such abuse and mistreatment, and may act as the legal representative of any patient who has not obtained other legal representation”.
It is apparent that the Legislature intended to provide a service for patients to protect their rights as against other governmental agencies and to insure that they are receiving *44 adequate and proper care under the law. While the main function of the Mental Health Information Service is not the making of applications and the institution of court proceedings to insure that mentally retarded patients are cared for in proper institutions, it undoubtedly falls within the general responsibilities which they have toward those patients, especially if no one else, as is evident in this case, is taking the necessary steps to insure that the mentally ill or the mentally retarded receive the services to which they are entitled. Consequently it is the ruling of this court that the Mental Health Information Service has the requisite power to bring this proceeding.
The court cannot help but note that the Mental Health Information Service has not completely grasped the full scope of its authority and responsibilities. While it may be truly said that the agency has evidenced a concern for the patient, they have not developed a system whereby they have followed through on all of the technical steps and procedures which would insure the patient’s transfer to a proper facility and eliminate the objections and defenses which have been raised in these proceedings. The agency should do more than suggest to other agencies that they do something. They properly take on the responsibility of court proceedings and they should develop a comprehensive system to be absolutely sure that they have complied, on behalf of the patient, with each and every technical aspect of the law. In that way they will be fulfilling their duty in accordance with the legislative intent— that of serving the need of the patient.
With respect to the third affirmative defense that the respondents are co-operating with the appropriate personnel to find a community placement for the patients, the court finds that such co-operation, if indeed it is taking place, is no defense to this action.
The fourth affirmative defense that the respondents have not been arbitrary, capricious and unreasonable may well be true. However, the heart of this proceeding centers around the allegations by the petitioner as to the obligations imposed upon the respondents by law, and their failure to perform such duty, in this case, the duty to provide the appropriate care for two mentally retarded individuals pursuant to article 13 of the Mental Hygiene Law.
Further, with respect to the third and fourth affirmative defenses, the Department of Mental Hygiene is charged with *45 the responsibility of carrying out the legislative intent. Its alleged co-operation in an effort to place the mentally retarded and its statement that its actions are not arbitrary, capricious and unreasonable cannot be taken seriously when viewed in light of the heavy responsibility placed upon the department under the appropriate law. The court is not unmindful of the fact that there may not be sufficient facilities for the care of all those mentally retarded who should be placed in residential facilities, but neither will the court countenance the attitude of all concerned in doing little or nothing to correct the situation. The department cannot adequately discharge its responsibility by sitting by passively and placing obstacles in the way of those legitimate agencies seeking to assist the mentally retarded in enforcing their rights under the law. It has become all too apparent that the modus operandi is to shroud admission into residential facilities with the bureaucratic maze of rules and regulations, allowing ultratechnical details to slow down the process of admission for those who so desperately require the services which the State has undertaken for them.
The department must take affirmative action in order to "discharge its responsibilities. It is not enough for the State to mandate the care of the mentally retarded — such a mandate without providing the facilities to assure the proper implementation of programs is meaningless.
With respect to the second affirmative defense, a more significant problem is presented to the petitioner. The petition on behalf of the individual patients alleges that both patients are mentally retarded and require treatment in an appropriate facility. Subdivision (a) of section 15.27 of the Mental Hygiene Law states: "The director of a school may receive and retain therein as a resident any person alleged to be mentally retarded and in need of involuntary care and treatment upon the certificates of two examining physicians or of one examining physician and one certified psychologist, accompanied by an application for the admission of such person. The examination may be conducted jointly but each examiner shall execute a separate certificate.”
The petitioner has failed to annex to the petition copies of certifications required before a director of a school may receive a patient as an involuntary resident. Additionally, in the myriad of papers presented to the court on the return date of this petition, heretofore designated as Exhibit "A”, it is appar *46 ent that the necessary certification for both patients pursuant to section 15.27 of the Mental Hygiene Law has not been presented to this court although there were two medical reports in connection with Michael Payne indicating retardation and one clinical psychologist’s report on Mary Jaghab likewise indicating retardation.
It was further contended on the hearing of this petition that the application to the Suffolk Developmental Center was not made on the appropriate forms. Reliance upon the failure to use specific forms in making the application for admission is a reliance on form rather than substance. It is obvious from the documents which have been presented to the court that information was given concerning the plight of the two patients in question. It is equally obvious that additional material was furnished pursuant to request. All of these documents, when taken together, gave to the Department of Mental Hygiene the necessary information to make appropriate decisions. Having the information in its possession, the department did nothing. It rather sought to delay the resolution of the problem, thereby forcing these court proceedings. It is the finding of this court that the forms approved by the Office of Mental Retardation and Development Disabilities may not have been » used in connection with an application for admission of the two patients to the Suffolk Development Center, but that there has been an application by which the petitioner provided all appropriate and necessary information upon which the Suffolk Developmental Center could make a determination, and therefore the court finds that objection of the respondents to be without merit.
The court cannot help but note that the Nassau County Medical Center has endeavored to act in a compassionate way in keeping the patients in hospital facilities even though the facilities are not proper and suitable for the mentally retarded. However, it is not enough for the hospital to merely demonstrate a humane attitude. Even though efforts were made at placement, the hospital never took any affirmative steps to prepare and file any formal applications on behalf of the patients, thereby leaving the Mental Health Information Service as the only responsible agency to institute proceedings of this nature.
In reviewing the petition and answers of the respondents herein, as well as after reviewing the appropriate statutes wherein the Office of Mental Retardation and Development *47 Disabilities has been delegated with the duty of providing appropriate care and treatment to mentally retarded individuals, it is the decision of this court that the petition be sustained to the following extent only: Inasmuch as the requisite certifications have not been presented on behalf of the petitioners, it is the order of this court that both petitioners be forthwith admitted to the Suffolk Developmental Center upon presentation of the appropriate certification as set forth in section 15.27 of the Mental Hygiene Law. In all other respects the petition is denied.