In the Matter of DAVID BEZIO et al., Respondents, v NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, Appellant.

Third Department, August 4, 1983

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for appellant.

*Michael O'Brien* for Mental Health Information Service, respondent.

MAHONEY, P. J.

This proceeding was commenced by the Mental Health Information Service (MHIS) on behalf of six individual petitioners who are voluntarily admitted residents of the Oswald D. Heck Developmental Center of the Office of Mental Retardation and Developmental Disabilities. It is brought pursuant to the provisions of subdivision (a) of section 15.23 of the Mental Hygiene Law which directs MHIS, under these existing circumstances, to review the "suitability of such resident[s] to remain in such [voluntary] status and [their] willingness to so remain". The statute provides further that if MHIS finds there is doubt that the patients are suitable for or willing to remain in their present status, an application may be made to the court for a determination of those questions, after a hearing, if one be requested. In its request for relief, MHIS seeks to have the court inquire into the ability of respondent and its facility to provide "appropriate" services to petitioners in an alternative environment.

Respondent moved to dismiss the petition for failure to state a cause of action, contending that the only issue that may be reviewed under the statute is the suitability of the patient to remain in a voluntary status, not whether the patient's care and treatment administered by a particular facility are appropriate. Special Term denied the motion to dismiss without prejudice to its renewal at Trial Term, to which the proceeding was transferred for a hearing. In its decision, Special Term noted that a hearing on alternative treatment programs may bear upon the "suitability" of a patient to remain at a particular facility, but left the question to be resolved by Trial Term after proof at the hearing. This appeal by respondent ensued.

Preliminarily, we must determine whether the order denying the motion to dismiss without prejudice to renew is appealable. An appeal may be taken to the Appellate Division as of right if the order of Supreme Court was made upon notice and affects a substantial right (CPLR 5701, subd [a], par 2, cl [v]). An order directing a hearing which will prolong resolution of the issues raised on the motion affects a substantial right (*Grand Cent. Art Galleries v*

*Milstein,* 89 AD2d 178). Accordingly, the matter is properly before this court.

The six petitioners on whose behalf this proceeding was brought are described as being either mildly or moderately retarded and it is alleged that they are capable of living outside an institutional setting in a supportive environment. A reading of their petition in this matter reveals that the gravamen of their proceeding is a challenge to their placement at O.D. Heck into units which were inhabited by persons with substantially lower functional levels. In its reply brief, respondent states that the O.D. Heck Developmental Center has begun reorganization of its residential units and that petitioners have subsequently been placed into residential units which serve high functioning clients who are well along the way to independence and are preparing for their eventual placement into the community. While, facially, these developments would appear to moot the instant appeal, it appearing that petitioners have obtained the real relief they sought by commencement of this proceeding, the broader policy issue of whether a voluntarily admitted resident should be permitted to challenge the "appropriateness" of the treatment he or she is receiving in the context of a proceeding pursuant to subdivision (a) of section 15.23 of the Mental Hygiene Law should be resolved in order to provide guidance to present and future residents under respondent's control who feel themselves to be aggrieved.

■ We hold that the clear wording of the statute only provides a mechanism for a periodic review of (1) whether a voluntarily admitted resident continues to remain "suitable" for voluntary status (see Mental Hygiene Law, § 15.15) and (2) whether the resident desires to continue in said status. To enlarge this statutory mechanism for periodic reviews to include challenges to the "appropriateness" of treatment received by voluntarily admitted residents would effectively entangle the courts in the oversight of administrative determinations involving questions of judgment, discretion, allocation of resources and priorities (see *Jones v Beame,* 45 NY2d 402, 407-408).

It must be remembered that courts have been justifiably hesitant in imposing treatment requirements for *involun-*

*tary* residents (see *Youngberg v Romeo,* 457 US 307). In this proceeding, we are dealing with individuals who are *voluntarily* admitted residents. As such, they are free to leave O.D. Heck Developmental Center, unless their status is converted to involuntary (see Mental Hygiene Law, § 15.13, subd [b]), if they are dissatisfied with the treatment they are receiving. We, therefore, fail to see the need for enlarging review under section 15.23 to include the issue of the "appropriateness" of treatment provided a voluntary resident and fear that such an expanded review will inevitably entail judicial determinations regarding the adequacy of medical decisions and procedures. Rather than be forced to pass upon these questions *de novo,* which will occur if these issues are allowed to be raised in a Mental Hygiene Law section 15.23 proceeding, we would favor reviewing the appropriateness of treatment received by a resident in the more conventional setting of a CPLR article 78 proceeding with its more limited standard of review (see, e.g., *Besunder v Coughlin,* 102 Misc 2d 41).

Accordingly, since the instant proceeding did not raise any factual issues requiring a hearing regarding the suitability of petitioners to remain in a voluntary status or their willingness to so remain, we reverse Special Term's decision transferring the proceeding to Trial Term and grant respondent's motion to dismiss the petition.

The order should be reversed, on the law, the motion granted, and the petition dismissed, without costs.

KANE, J. (dissenting). We recognize the validity of the principle of judicial restraint which insulates the court from involvement with the management, operation or administration of an executive enterprise (*Jones v Beame,* 45 NY2d 402, 408). However, in our view, the issue presented in this case transcends that broad policy concept with a much narrower question; the interpretation of particular laws and regulations designated to protect the individual rights of a mentally disabled patient.

We start with an analysis of the statutory provisions establishing the Mental Health Information Service (MHIS) and defining its powers and duties (Mental Hygiene Law, § 29.09). Since its inception, these powers and

duties have been expanded with legislative consistency (L 1972, ch 251; L 1976, ch 334; L 1977, chs 980, 981) and administrative regulation (14 NYCRR 22.2, 24.2, 27.8; 22 NYCRR 823.2), all in furtherance of its primary purpose to "study and review the admission and retention of all patients" (Mental Hygiene Law, § 29.09, subd [b], par 1). These powers include the right, when necessary, to institute legal action to accomplish its purpose (see *Besunder v Coughlin,* 102 Misc 2d 41). Its right to apply to the court on behalf of a patient, for review of the "suitability" of that patient to remain in a facility or willingness to so remain, is expressly granted to MHIS by statute (Mental Hygiene Law, § 15.23).

Certainly an inquiry into the "suitability" of a patient to remain in an institution should include an examination of the appropriateness of the care and treatment provided one who cannot care for himself or herself. Such an inquiry would not involve the court in the exercise of a professional judgment, but, significantly, a pursuit for the answer to the ultimate question raised in the proceeding; namely, was professional expertise available and was it exercised. This is the duty imposed upon the State (*Youngberg v Romeo,* 457 US 307, 321-323) and MHIS is the vehicle established to monitor the performance of that duty. Parenthetically, it should be noted that a careful examination of this record and the history of the patients contained therein renders any attempt to classify these patients "voluntary", rather than "involuntary", incredulous. Finally, and as we conclude is demonstrated by this record, there is a need for overview of the operation of this vast enterprise that directly affects the health, safety and welfare of unfortunate members of society, lest they become lost in the vast confines of a particular facility. MHIS and the procedure sought to be employed herein provide a quick, certain and economical way to fulfill an obligation that the courts owe to every citizen.

We would modify the order appealed from by deleting that provision which denied respondent's motion "without prejudice to renew" and otherwise affirm.

WEISS and LEVINE, JJ., concur with MAHONEY, P. J.; SWEENEY and KANE, JJ., dissent and vote to modify in an opinion by KANE, J.

Order reversed, on the law, motion granted, and petition dismissed, without costs.