Carolyn **FLOWERS, et al., Plaintiffs,**

v.

Arthur Y. **WEBB, as Acting Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, Defendant.**

No. CV–83–1883.

United States District Court,
E.D. New York.

Dec. 6, 1983.

Minna J. Kotkin, N.Y. Lawyers for Public Interest, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of N.Y. by Jeffrey I. Slonim, Asst. Atty. Gen., New York City, for defendant.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York by Michael D. Young and Thomas W. Bergdall, New York City, for applicant for intervention.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

Plaintiff, who brings this action by her mother, is a mentally retarded 19 year-old girl. She presently resides at the Ashford Diagnostic Reception Center ("Ashford") in Brooklyn, New York, where she has lived since 1981, when she was placed there at the request of her mother. Ashford is one of five such centers operated by the City of New York Human Resources Administration (the "City") which are intended to provide short-term shelter care and diagnostic evaluations.

Plaintiff brings this action against defendant State Commissioner (the "State") on behalf of herself and a purported class of children in similar circumstances. Plaintiff contends that the City's facilities are not equipped to provide care or treatment to mentally retarded children and that the safety and welfare of these children is constantly jeopardized. The City is not a defendant in this action but rather, seeks leave to intervene as a plaintiff. This action has been brought solely against the State Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD"). The plaintiff alleges that the State has violated her civil rights by failing to fulfill a constitutionally mandated duty to provide proper facilities by removing her from the city facility and arranging appropriate long-term placement in a State facility.

Defendant has moved for an order dismissing the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. on the ground that it fails to state a claim upon which relief can be granted. A 12(b)(6) motion to dismiss should not be granted unless it appears from the pleadings beyond doubt that the plaintiff is unable to prove any set facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir.1981). For the reasons stated below, defendant's motion for an order of dismissal is granted in part and denied in part.

Plaintiff's first claim for relief relies upon the due process and equal protection clauses of the Fourteenth Amendment to

the United States Constitution, and in 42 U.S.C. § 1983.

*Due Process Claim*

■ The due process clause places substantive as well as procedural restrictions on state action. Most substantive restrictions are based on liberties protected by the Bill of Rights and are held to apply to the states through the Fourteenth Amendment's due process clause. *See Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir.1983).

■ Defendant contends that it bears no responsibility for the care and treatment of the plaintiff since she is residing in a City institution. The State argues that since the plaintiff is in the City's "custody," no cause of action for deprivation of rights protected by the due process clause can accrue against the State. In essence, the State argues that it is not a proper defendant to this action. This court disagrees, and finds that in light of the relevant State statutory scheme, the State has the ultimate responsibility toward the maintenance of plaintiff's due process rights, and that therefore, plaintiff has stated a claim upon which relief can be granted.

An analysis of the applicable state statutes indicates that any constitutional rights owed to the plaintiff are the responsibility of the State of New York. New York State's Mental Hygiene Law ("MHL") §§ 13.01 and 33.03 entitle mentally retarded citizens of New York to care, treatment and rehabilitation. MHL § 13.07 delegates this responsibility to the OMRDD, an autonomous office within the State Department of Mental Hygiene.

In accordance with New York State Social Services Law ("SSL") § 61, the State has delegated operation of public welfare programs to entities such as New York City:

> For the purpose of administration of public assistance and care the state shall be divided into county and city social services districts as follows:

> 1. The City of New York is hereby constituted a city social service district
>
> . . . .

The State then reimburses the local entities for the care provided.

Under MHL Article 31, the State has established provisions for the regulation and quality control of services for the mentally disabled. MHL § 31.01 establishes that the Commissioner of OMRDD shall ensure that all services for the mentally disabled, whether provided by the department, by a local government or by a provider of services, are periodically evaluated. Moreover, it is the State's statutory scheme that permitted plaintiff to be admitted to the City facility. Under SSL § 384–a, "[t]he care and custody of a child may be transferred by a parent ... to an authorized agency ... in accordance with the provisions of this Section."

The Commissioner of OMRDD also grants operating licenses to facilities that provide care and treatment to the mentally disabled. MHL § 31.02 provides that no provider of services shall engage in the "operation of a residential facility for the care, custody or treatment of the mentally disabled ...," without an operating certificate issued by the Commissioner. The operation of such facilities must "be in accordance with the ... regulations of the Commissioner." MHL §§ 31.07 and 31.09 provide OMRDD with far-reaching powers of investigation and inspection. Further, the City's responsibility toward the children in its diagnostic centers is defined by SSL § 398, which mandates that shelter and care must be provided for all children in need and that admission be obtained for mentally disabled children to State or other suitable institutions in accordance with New York's Mental Hygiene Law.

Further, the State's argument that the City's exercise of *physical* custody precludes the State from having *legal* custody of the plaintiff, is contrary to law. Physical custody is not necessarily the equivalent of legal custody. *See Doe v. Staples*, 706 F.2d 985 (6th Cir.1983).

It would thus seem clear that New York State has a substantial responsibility for overseeing and regulating the administration of services provided to mentally disabled patients in facilities such as Ashford.

In *Reynolds v. Sims*, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 (1964), the court noted that political subdivisions of states have never been considered as "sovereign entities" but rather as "subordinate governmental instrumentalities" designed "to assist in the carrying out of State governmental functions." Further, New York State court decisions have held that the State's statutory scheme provides that the State has the ultimate responsibility for the care and treatment of mentally retarded patients. *Savastano v. Provost*, N.Y.L.J., June 4, 1982, p. 5 Col. 3 (Sup.Ct. Queens Co.1982); *Besunder v. Coughlin*, 102 Misc.2d 41, 422 N.Y.S.2d 564 (Sup.Ct. Nassau Co.1979).

■ Because the State bears an affirmative obligation to provide adequate care to plaintiff and has chosen to delegate that function, the acts and omissions toward the plaintiff may be considered that of the State. *See Lombard v. Eunice Kennedy Shriver Center*, 556 F.Supp. 677, 680 (D.Mass.1983). Accordingly, the alleged violations of plaintiff's constitutional rights may be deemed to be the responsibility of the defendant.

It is plaintiff's contention that by failing to provide her with appropriate placement, treatment and training, the State has deprived her of her due process rights of minimally adequate treatment and training, safety, and treatment in the least restrictive environment. Plaintiff also argues that the State has violated her rights under 42 U.S.C. § 1983.

■ In support of its motion to dismiss, the State contends that the Constitution does not create an absolute right to treatment on demand. Rather, the State argues that the Constitution requires only that where a mentally retarded individual is involuntarily institutionalized in a state facility must the state provide minimally adequate training.

In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court recognized that mentally retarded individuals who are involuntarily committed to state institutions, have a constitutionally protected liberty interest in accordance with the due process clause of the Fourteenth Amendment. The liberty interest was broadly defined by the Court as encompassing reasonably safe conditions of confinement and freedom from unreasonable bodily restraints. *Id.* at 324. The individual is also "entitled to minimally adequate training" as might reasonably be required by those interests. *Id.* at 322.

The State contends that *Youngberg* is inapplicable here, as the plaintiff in the case at bar is not in a state institution nor was she involuntarily committed. This court has already determined that the situs of plaintiff's commitment will not relieve the State of its statutorily-designed responsibility toward her. As for the State's argument that plaintiff was voluntarily committed to the City institution, this is not clearly the case. Plaintiff was placed at Ashford by her mother. SSL § 358–a provides that a child may be placed in public custody by a parent. If a child is likely to remain in public custody for more than 30 days, there must be judicial review of the commitment by the Family Court.

Secondly, the distinction between "voluntary" and "involuntary" commitment is at best, illusory, in cases such as this. As stated by Chief Judge Weinstein in *Society for Good Will to Retarded Children, Inc. v. Cuomo*, No. 78–1847 (E.D.N.Y. slip op. August 10, 1983 at 148–149), the constitutional framework set forth in *Youngberg* encompasses "those whose commitment may have been technically voluntary," particularly where "those unable to care for their retarded relatives at home have no real option but to place their children ... at [OMRDD centers]." Chief Judge Weinstein reasoned that "[t]he mentally retarded client's stay in the institution must be deemed involuntary." *See Halderman v.*

*Pennhurst State School,* 612 F.2d 84, 94 (3d Cir.1979), *rev'd on other grounds and remanded,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Thus, an individual's liberty interest may not be deemed less worthy of protection due to his consent to be placed in a situation of confinement. *Association for Retarded Citizens v. Olson,* 561 F.Supp. 473, 485 (D.N.D.1982).

In light of the State's statutory procedures for handling mentally disabled children, the State's argument that it is not a proper defendant is not persuasive enough to support its dismissal motion, as there appears to be a question as to whether the State's application of its statutory scheme comports with the constitutional guidelines set forth in *Youngberg. See e.g. Christopher N. v. McDaniel,* 569 F.Supp. 291, 301 (N.D.Ga.1983).

This court is cognizant of the fact that 42 U.S.C. § 1983 does not provide substantive rights, but merely serves to provide a remedy for violations of the Constitution or substantive statutes. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979).

■ In order to state a claim for relief under § 1983, the plaintiff need only allege that the defendant deprived her under color of state law of a right secured by the Constitution and the laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Green v. Maraio,* 722 F.2d 1013 at 1016 (2d Cir.1983). Since this court is now holding that the plaintiff has stated a cause of action for deprivation of her liberty interest under the Fourteenth Amendment's due process clause, that claim will suffice as a source for this court's jurisdiction under 42 U.S.C. § 1983.

*Equal Protection Claim*

Plaintiff further alleges that the defendant has created an unlawful classification in violation of the equal protection clause of the Fourteenth Amendment. The alleged classification purportedly differentiates between mentally retarded residents of Special Services for Children ("SSC"), and non-SSC residents, who allegedly receive more adequate placements and services than do the SSC residents.

■ While the equal protection clause does not deprive the states of all power of classification, *Buffalo Teachers Federation, Inc. v. Helsby,* 515 F.Supp. 215, 224 (S.D.N.Y.1981), *aff'd,* 676 F.2d 28 (2d Cir. 1982), it does require the state to treat alike persons who are similarly situated, in the absence of sufficient justification for difference in treatment. *French v. Blackburn,* 428 F.Supp. 1351 (M.D.N.C.1977), *aff'd,* 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979). To state a claim under the equal protection clause a plaintiff must allege either that a statute on its face treats similarly situated groups differently, *United States v. Antelope,* 430 U.S. 641, 649–650 (1977) or that a facially neutral statute is enforced in a discriminatory manner. *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

Here, the plaintiff alleges that different treatment is accorded to those mentally retarded children housed at diagnostic centers for extended periods of time than is accorded to retarded children similarly situated, in terms of disability and need for residential care, who seek or receive state provided services. In support of its argument, plaintiff contends that, as stated in the City's Intervenor Motion:

OMRDD assigns the lowest priority to the placement of children who are in the City's custody. It will regularly place non-SSC children, even though these children were referred to it after SSC children were referred.

■ Equal protection violations have been found where a classification deprives a group of persons of a fundamental right. *See Shapiro v. Thompson,* 394 U.S. 618, 634 (1969). The due process interest in liberty, as articulated in *Youngberg, supra,* is such a fundamental right. See *Philipp v. Carey,* 517 F.Supp. 513, 518 (N.D.N.Y.1981). Accordingly, as plaintiff has asserted classifications which allegedly impinge upon fundamental liberty interests,

she has stated a claim under the equal protection clause.

*Rehabilitation Act*

 Plaintiff's second claim for relief is premised upon Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 794 states in pertinent part that:

No otherwise qualified individual ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

The gravamen of plaintiff's second cause of action is that the State's failure to provide her with appropriate placement is violative of the Rehabilitation Act in that it discriminates against her "solely by reason of [her] handicap."

The State argues that Section 504 applies only to statutorily defined handicapped individuals who are deemed "otherwise qualified" to participate in the program in question *"in spite of* [their] handicap." *See Doe v. New York University,* 666 F.2d 761, 775 (2d Cir.1981). (emphasis in original) In the instant action, the State argues that the plaintiff seeks appropriate placement *because* she is handicapped. Thus, the State contends, she is not an "otherwise qualified handicapped individual" and has not been denied placement "solely by reason of [her] handicap" within the meaning of Section 504. This court concurs.

In *Doe v. New York University, supra,* the court held that in order to establish a violation of section 504, a plaintiff must prove:

(1) that she is a "handicapped person" under the Act, (2) that she is "otherwise qualified" for the position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance.

*Id.* at 774–775. *See Joyner v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983), *rev'g* 533 F.Supp. 233 (S.D.N.Y.1982). In the case at bar, plaintiff has demonstrated that she is

handicapped under the Act and that the defendant's assistance programs are supported by federal funding. She has failed however, to demonstrate how she can fit within the meaning of an "otherwise qualified individual." Under the Act, such individuals have been defined as qualified for relevant programs "in spite of" their handicaps. *Doe v. New York University,* 666 F.2d at 775. Thus, the Supreme Court in *Southeastern Community College v. Davis,* 442 U.S. 397, 405 (1979), held that section 504 indicates "only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context."

Here, the plaintiff seeks to have the State provide her with the placement and care appropriate to a mentally retarded individual *because* she is handicapped—not *in spite of* her handicap. Thus, the second criterion of the *Doe* test—that plaintiff establish she is "otherwise qualified" in spite of her handicap for state care and treatment, cannot be met in this instance. Accordingly, defendant's motion to dismiss plaintiff's claim for relief under the Rehabilitation Act, is hereby granted.

Plaintiff's third claim for relief is based upon the State's failure to remove her from the City facilities. Plaintiff relies upon the Fifth, Eighth and Fourteenth Amendments to the Constitution as well as 42 U.S.C. § 1983.

*Fifth Amendment Claim*

 The Fifth Amendment applies only to the federal government and not the state. *Popow v. City of Margate,* 476 F.Supp. 1237, 1242 n. 2 (D.N.J.1979). Therefore, allegations of "federal action" are required to state a claim for deprivation of due process in violation of the Fifth Amendment. *See Junior Chamber of Commerce v. Missouri State Junior Chamber of Commerce,* 508 F.2d 1031 (8th Cir.1975); *Guthrie v. Alabama By-Products Co.,* 328 F.Supp. 1140, 1143 (N.D.Ala. 1971), *aff'd,* 456 F.2d 1294 (5th Cir.), *cert. denied,* 410 U.S. 946 (1972). Here, plaintiff alleges no "federal action." Thus, the

Fifth Amendment does not apply and plaintiff's claim thereunder is hereby dismissed.

*Eighth Amendment Claim*

 Plaintiff cites to the Eighth Amendment in support of her contention that the State is obligated to remove her from the City facility. Defendant argues that the Eighth Amendment applies only to persons convicted of crimes. The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Eighth Amendment has traditionally been applied to criminal punishment, *see Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), and this court will not extend the Amendment's parameters so as to encompass the situation under which plaintiff now finds herself. *See Ryan v. Cleland,* 531 F.Supp. 724, 731 (E.D.N.Y.1982). Accordingly, the court finds that plaintiff's Eighth Amendment claim must be dismissed for failure to state a claim upon which relief can be granted.

*Pendant State Statutory Claim*

 Plaintiff's fourth claim for relief alleges a right to proper treatment pursuant to New York's Mental Hygiene Law.

The plaintiff contends that MHL §§ 13.-01, 13.07 and 33.03 create an affirmative burden on the State to provide care, treatment and proper facilities for its patients. These statutes, it is contended, create an enforceable right to treatment for those confined as a result of their disabilities.

The State, *citing Klostermann v. Carey,* No. 11270/82 (Sup.Ct.N.Y.Co.), *aff'd,* 91 A.D.2d 593, 458 N.Y.S.2d 190 (1st Dep't. 1982), argues that under New York law, plaintiff's claims are non-justiciable. *Klostermann* however, is not applicable here. In *Klostermann,* plaintiff sought to compel the State to provide community-based residences for former mental patients. The court noted the impropriety of mandamus relief to compel a "long series of continuous acts, performance of which it would be impossible for a Court to oversee

...." *Id.* at 3–4. The *Klostermann* court noted that the plaintiffs were requesting the court to order the State to develop and implement a plan which would require the court to retain jurisdiction in order to "mak[e] certain that residential accommodations provided comply with all appropriate local zoning, building, fire and safety codes, ordinances and regulations, as required by law ...." *Id.* at 5 (*citing* Mental Hygiene Law § 29.15(i)). In the instant case, such judicial supervision would be unnecessary. The relief herein requested would only require that plaintiff be removed from Ashford and placed into an appropriate State facility.

New York courts have held that the State's Mental Hygiene Law requires the state to ensure appropriate care and treatment for mentally disabled patients in city or county facilities. In *Besunder v. Coughlin,* 102 Misc.2d 41, 422 N.Y.S.2d 564 (Sup.Ct. Nassau Co.1979), the court, relying upon MHL §§ 13.01 and 13.07, held that two mentally retarded persons who were confined to a county hospital were to be admitted to a state-operated facility. In addition to its recognition of enforceable rights under the Mental Hygiene Law, this decision is further evidence that under New York law, treatment of the retarded is a State, rather than a local responsibility.

In *Savastano v. Provost,* N.Y.L.J. June 4, 1982, p. 5 col. 3 (Sup.Ct. Queens Co.1982) the court held that Article 13 of the Mental Health Law reflected the intent of the Legislature "to place an affirmative duty and responsibility on the Commissioner of OMRDD to provide to the mentally retarded ... appropriate facilities under his jurisdiction." The court directed the State to transfer petitioners to a facility under OMRDD's jurisdiction within 60 days.

Finally, in *Woe v. Mathews,* 408 F.Supp. 419, 427 (E.D.N.Y.1976), *aff'd sub nom. Woe v. Weinberger,* 562 F.2d 40 (2d Cir. 1977), *cert. denied, sub nom. Woe v. Califano,* 434 U.S. 1048, 98 S.Ct. 895, 54 L.Ed.2d 799 (1978), the State conceded that MHL §§ 15.01 and 15.03 (now designated §§ 33.01 and 33.03) provided a statutory

right of treatment for the mentally disabled. *See Project Release v. Prevost,* 551 F.Supp. 1298, 1305 (E.D.N.Y.1982); *Renelli v. State Commissioner of Mental Hygiene,* 73 Misc.2d 261, 340 N.Y.S.2d 498 (Sup.Ct. Richmond Co.1973).

Therefore, the court finds that plaintiff has stated state claims against the defendant. This court has discretion to exercise pendent jurisdiction over the state law claim as it "derive(s) from a common nucleus of operative fact" as the federal claims in this action, and the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *See UMW v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, defendant's motion to dismiss plaintiff's state-law claims is hereby denied.

### Motion for Class Certification

■ Plaintiff has moved for an order pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure determining that this action may be maintained as a class action. Plaintiff asserts that there are 14 current members of the proposed class and an unknown number of future class members and that joinder is not practicable. *See* Rule 23(a)(1). Plaintiff further contends that there are common questions of law and fact concerning the proposed class in that the defendant's failure to effectuate placement in state-run institutions is common to all proposed class members. Plaintiff also alleges that the claims of the Representative Party are typical of the claims of the class and that the plaintiff will fairly and adequately protect the interests of the class. Finally, plaintiff argues that class certification under Rule 23(b)(2) is appropriate because the defendant's refusal to act is generally applicable to the class and injunctive relief to the class as a whole would be appropriate.

It is "fundamental" that in seeking to maintain an action as a class action, there must be a positive showing that to deny the prayer would be "impracticable." *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968). Plaintiff here has asserted a current putative class membership of only fourteen members, all of whom reside within the City of New York. By definition, all future class members will also reside at City facilities. While there is no "magic number" by which the numerosity requirement may be automatically met, this court finds that the plaintiff has failed to meet her burden of showing the impracticality of joinder. *See EWH v. Monarch Wine Co., Inc.,* 73 F.R.D. 131 (E.D.N.Y.1977); *see Moscarelli v. Stamm,* 288 F.Supp. 453, 463 (E.D.N.Y. 1968). The geographical proximity of the small number of potential plaintiffs convinces this court that the class action should not be certified. *See EWH v. Monarch Wine Co., Inc.,* 73 F.R.D. at 133.

Accordingly, plaintiff's motion for certification at this action as a class action is hereby denied.

### City's Motion to Intervene

■ The City of New York seeks to intervene in this action either as a matter of right under F.R.C.P. 24(a)(2) or pursuant to F.R.C.P. 24(b)(2). Permissive intervention under Rule 24(b)(2) is wholly within the discretion of the court. *See United States Postal Service v. Brennan,* 579 F.2d 188, 191–192 (2d Cir.1978). The principal consideration in determining a motion for permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." F.R.C.P. 24(a)(2). The court finds that in considering the interests of the parties to this action, the City's intervention as a party to the litigation will expedite this matter. Accordingly, the motion by the City of New York to intervene in the action pursuant to F.R.C.P. 24(b)(2) is hereby granted.

So ordered.