*1018 OPINION OF THE COURT
Lawrence E. Kahn, J.
The petition will be dismissed, without costs.
Prior to April 16, 1985, the Board of Regents had in place programs by which foreign medical schools could be approved or registered by the Regents. Thus, the words "approved” and "registered” had established meanings in the Department of Education. Effective April 16, 1985, subdivision (9) was added to section 605 of the Education Law, setting up a program whereby a physician could obtain forgiveness of a student loan by agreeing to practice in an area of New York State designated as having a shortage of physicians. The Legislature specifically defined eligibility to take part in the program as follows: "The applicant must be a resident of New York state and a graduate of a medical school approved or registered by the regents.” (Education Law § 605 [9] [a] [1].)
Petitioner attended a medical school in Romania that is neither registered nor approved by the Regents. Upon returning to the State, she successfully obtained her medical license and now practices as a family practitioner in an area which has been designated as having a shortage of physicians for purposes of the loan forgiveness program. In the early part of 1989, petitioner determined to apply for participation in the loan forgiveness program. The 1989 Bulletin of Information For Candidates for the Regents Physician Loan Forgiveness Program states the eligibility requirements in bold letters on page 3, warning all applicants that they must be a graduate of a program of study approved or registered by the Department. Nonetheless, petitioner went forward with her application. By written determination dated June 3, 1989, petitioner was advised by the Education Department that: "A review of your application reveals that the medical program from which you graduated is not registered or approved by the State Board of Regents. Therefore, you are not eligible to compete for this award.”
Petitioner seeks to annul that determination, and the petition sets forth the following causes of action: (1) a first cause of action alleging that the Department’s determination is arbitrary and capricious because the exclusion of certain medical schools’ graduates has no rational relationship to the Legislature’s stated purpose of encouraging physicians to serve in areas where there is a shortage of physicians; (2) a second cause of action asserting that the respondent’s determi *1019 nation is arbitrary and capricious because it excludes certain foreign medical schools when the same schools are approved for purposes of loans guaranteed by the New York State Higher Education Services Corporation; (3) a third cause of action asserting that petitioner has been denied due process because the Department never provided her with a notice of which medical schools are included on the approved list; and (4) a fourth cause of action asserting that petitioner has been denied equal protection of the law because the loan forgiveness program discriminates among similarly situated physicians by categorizing them according to what school they attended.
The first cause of action lacks merit. The respondent administrative body did not set the eligibility standards for participating in the loan forgiveness program, the Legislature did. It is settled law that when a term has taken on a well-settled administrative meaning of which the Legislature is aware, that term when used in a new statute should be accorded the same meaning as previously (Matter of Shattenkirk v Finnerty, 97 AD2d 51, 55, 56, affd 62 NY2d 949). Here, the words "approved” and "registered” as applied to foreign medical schools had established meanings within the Education Department prior to the enactment of subdivision (9) of section 605 of the Education Law. There was an existing list of such schools, which list was used for determining eligibility to take the physician licensing examination. When the Legislature chose to use those terms of art in defining eligibility, it must be assumed that it knew what it was doing. The eligibility limitation may or may not foster the broader purpose of the legislation which is to encourage physicians to practice in areas of shortage, but whatever its wisdom, the requirement is that of the Legislature. As a subordinate administrative body, the respondent had no choice but to implement the legislative mandate.
The second cause of action in the petition arguing that the respondent should have approved of the petitioner’s medical school because that school was approved for the purposes of student loans by the New York State Higher Education Services Corporation once again ignores the plain mandate of the statute. The statute specifically directs that the applicant must be a "graduate of a medical school approved or registered by the regents. ” The Legislature did not say, as it could have done, that eligibility hinged on being a graduate of a medical school approved or registered by the New York State *1020 Higher Education Services Corporation. The respondent has to follow the direction of the Legislature and it can only accept graduates of medical schools approved or registered by the Regents. The respondent is not in the position to tell the Board of Regents that it should change its criteria as to what is an approved or registered school to the same criteria used by the New York State Higher Education Services Corporation. Consequently, the respondent did not act arbitrarily as charged in the second cause of action.
The third cause of action contending that the Department has a due process obligation to notify students of foreign medical schools that their schools have chosen not to apply to the Regents for approval, which action could at some future point jeopardize their chance to participate in the student loan forgiveness program, is similarly without merit.
As to the fourth cause of action, a person asserting an Equal Protection Clause claim must either establish that the statute or rule on its face treats similarly situated groups differently, or that a facially neutral statute or rule is being enforced in a discriminatory manner (Flowers v Webb, 575 F Supp 1450). Petitioner has not met that burden. The statute merely limits eligibility to graduates of medical schools registered or approved by the Regents. There is no statement in the statute that a graduate of a foreign medical school is excluded from participation. The respondent’s rules allow any foreign medical school to apply for approval. Petitioner’s school chose not to do so. Petitioner chose to attend that school. There is simply no evidence of a statute or rule which, on its face, treats similarly situated groups differently, or action by State officials enforcing the statute or rule in a discriminatory manner.