Lori Boyar REALBUTO, Plaintiff,

v.

Elin M. HOWE, Individually and as Commissioner of the New York State Office of Mental Retardation and Developmental Disability, and Edward Regan, Individually and as Director of the New York State Department of Audit Control, and Josephine Gambino, Individually and as Commissioner of the New York State Department of Civil Service, and the State of New York, Defendants.

No. 92–CV–1003.

United States District Court, N.D. New York.

Nov. 8, 1993.

Disability Advocates, Inc., Albany, NY (Simeon Goldman, of counsel), for plaintiff.

Robert Abrams, Atty. Gen., State of NY, Albany, NY (David B. Roberts, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Plaintiff Lori Boyar Realbuto, a former employee at the New York State Office of Mental Retardation and Developmental Disability (OMRDD), filed this civil rights action against New York State and several of its officials including Elin M. Howe (Commissioner of the OMRDD), Edward Regan (former Comptroller and Director of the State's Department of Audit and Control), and Josephine Gambino (Commissioner of Civil Service). Ms. Realbuto, who suffers from a hearing impairment and chronic fatigue immunity deficiency syndrome, alleges that the defendants discriminated against her on the basis of her handicaps in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the due process and equal protection clauses, and the Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213. Now before the Court are cross-motions for summary judgment.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure permits a court to render a summary judgment only if,

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The materiality of a factual dispute depends upon the governing law. A brief recitation of the facts and applicable law is therefore in order.

Ms. Realbuto began her State service in 1974 as a Mental Hygiene Therapy Aid, a

position within the competitive class[1] of the State's civil service system. In 1979, she was appointed to serve as a Budget Analyst Trainee in the Division for Youth (DFY). This position in the DFY fell within the noncompetitive class of civil service appointments. She served in the DFY until sometime in 1981, when she returned to the OMRDD to serve as a "Senior Administrative Analyst 55–b," also a position in the noncompetitive class.

The term "55–b" appended to Ms. Realbuto's job title indicates that she obtained her position under Section 55–b of the State's Civil Service Law. That section permits the State to appoint certain handicapped persons to the civil service even though they have not taken the competitive civil service examination. Specifically, the section provides:

> The state civil service commission may determine up to twelve hundred positions with duties such as can be performed by persons with physical or mental disability who are found otherwise qualified to perform satisfactorily the duties of any such position. Upon such determination the said positions shall be classified in the noncompetitive class, and may be filled only by persons who shall have been certified by the employee health service ... as being a person with either a physical or mental disability, but capable of performing the duties of such positions.

N.Y.Civ.Serv. § 55–b[1]. There is no dispute that Ms. Realbuto knew that the Senior Budget Analyst position which she sought in 1981 would be classified as noncompetitive under Section 55–b. *See* Letter from Lori A. Boyar to Michael Pelham dated May 19, 1981 (attachment No. 15 to Defendants' Answers to Interrogatories).

Ms. Realbuto served the OMRDD until June, 1991 when defendant Elin M. Howe notified her that her position was being abolished due to a "reduction-in-force" or "RIF" that apparently resulted from the State's fiscal woes. As a result of the RIF, the State laid off 373 employees at the OMRDD. Of those employees, 347 were in the competitive class and 5 were employees classified under Section 55–b as noncompetitive employees.[2] *See* Defendants' 10[J] Statement at ¶ 20; Plaintiff's Responsive 10[J] Statement at ¶ 20.

The State helped Ms. Realbuto find employment with the Research Foundation for Mental Hygiene, a non-state employer. After accepting the position, however, Ms. Realbuto found it to be unsatisfactory. *See* Defendants 10[J] Statement at ¶ 26; Plaintiff's Responsive 10[J] Statement at ¶ 26. She complains that the position was temporary, required too much travel, and provided inferior employee benefits. She would have preferred to retain her employment by bumping a more junior colleague, even one in the competitive class.

Generally, when the State reduces its work force it first displaces the employees with the shortest duration of State service within each class of employees, either the competitive or non-competitive class. *See* N.Y.Civ.Serv. §§ 80 (competitive class) & 80–a (noncompetitive class). This principle gives rise to a practice called "bumping" through which an employee whose position is eliminated has the option of displacing a more junior employee in the same class. Under the civil service statute, a noncompetitive employee may not bump a competitive employee and vice versa. Ms. Realbuto, as an employee who held a noncompetitive position, was unable to bump a junior employee and for this reason she lost her job.

1. The term "competitive class" refers to a category of civil service jobs for which "it is practical to ascertain the merit and fitness of applicants by competitive examination...." *See* N.Y.Civ.Serv. § 44. The term "noncompetitive class" refers to jobs for which "it is not practical to ascertain the merit and fitness of applicants by competitive examination." *Id.* § 42[1]. Thus, both disabled and non-disabled employees serve in both classes: disabled applicants who pass the examination may serve in the competitive class; non-disabled applicants who apply for positions that do not lend themselves to competitive examination may serve in the non-competitive class.

2. As for the remaining 20 employees not accounted for, the balance may be Section 55–c employees, i.e. handicapped veterans, or employees who worked in jobs for which "it is not practical to ascertain the merit and fitness of applicants by competitive examination." *See, e.g.,* N.Y.Civ.Serv. §§ 55–c & 42[1].

Relying on two statutory and two constitutional provisions, she filed this action. Acknowledging, however, that her claims under the Americans with Disabilities Act and the Rehabilitation Act of 1973 are identical, the plaintiff has apparently abandoned her claims under the latter. *See* Plaintiff's Memorandum of Law in Opposition at 22 n. 10.

### 1. *Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.*

 Congress has forbidden recipients of Federal financial assistance from discriminating against individuals on the basis of disability. Specifically, the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(8) [29 U.S.C. § 706(8) ], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794. The Second Circuit has set forth the requirements for a *prima facie* case under the Act. To prevail, a plaintiff must prove that,

> (1) she is a "handicapped person" [or an individual with disabilities] under the Act, (2) that she is "otherwise qualified" for the position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance.

*Doe v. New York University,* 666 F.2d 761, 774–74 (2d Cir.1981).[3] Assuming that Ms. Realbuto has made out a *prima facie* case, the burden would then shift to the government to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was injured for a legitimate reason, "whereupon the plaintiff must prove that the reason was not true but a pretext for impermissible discrimination." *Id.* at 776.

In other words, after plaintiff makes a *prima facie* case the defendants must "rebut the inference of illegality." *Rothschild v. Grottenthaler,* 907 F.2d 286, 190 (2d Cir.1990).

The material facts in this case are not disputed. For example, there is no dispute that Ms. Realbuto's job responsibilities as "Senior Administrative Analyst 55–b" were identical to those of a Senior Administrative Analyst in the competitive class. There is also no dispute that plaintiff satisfactorily performed her job with OMRDD. *See* Plaintiff's 10[J] Statement at ¶ 20; Defendants' Responsive 10[J] Statement at ¶ 20. Similarly, there is no dispute that the State's OMRDD receives or distributes federal funds, a prerequisite to liability under the Rehabilitation Act. *See* Plaintiff's 10[J] Statement at ¶ 4; Defendants' Responsive 10[J] Statement at ¶ 4.

With respect to the second requirement of a *prima facie* case, the State responds that Ms. Realbuto is not "otherwise qualified" for the retention or bumping rights that she seeks because unlike her colleagues in the competitive class, she did not earn her position through competitive examination. The defendants summarize this portion of their argument:

> [I]t is undisputed that plaintiff was not legally entitled to the retention benefits of competitive class employees, as she has not met all of the requirements for competitive class appointment—that is, by passing a competitive examination and being reachable on the eligible list established from the results of the examination.

*See* Memorandum of Law In Support of Defendants' Motion for Dismissal at 8. This argument seems to ignore the regulation defining the term "qualified handicapped person." With respect to employment, the regulation provides that the term means a "handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question." *See* 45 C.F.R. § 84.3(k)(1) (1992); *School Bd. of Nassau*

---

**3.** The Court notes that the statute now uses the term "qualified individual with a disability" rather than "qualified individual with handicaps." Congress accomplished the amendment through its Act of Oct. 29, 1992, P.L. 102–569, Title I, Subtitle A, § 102(p)(32), Title V, § 506, 106 Stat. 4360, 4428. The cases and the regulations still use the term "handicap" but the change is not material for present purposes.

*County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130 n. 17, 94 L.Ed.2d 307 (1987). Thus, the term focuses on the functions of the job, rather than the technical requirements for obtaining it. Because there is no dispute that Ms. Realbuto can perform the work in question, the Court finds that she is "otherwise qualified" within the meaning of the statute and the implementing regulations.

Thus, Ms. Realbuto has come three quarters of the way to establishing a *prima facie* case. The only question that remains is whether the defendants discriminated against Ms. Realbuto "solely by reason of her handicap." The gist of Ms. Realbuto's complaint is that her classification as "noncompetitive" deprives her of the more favorable bumping rights that employees in the competitive class enjoy, even though she did the same work as her colleagues who acquired their jobs after taking a competitive examination. She says that the Civil Service law should provide a mechanism for converting from a noncompetitive status to competitive status, and that the failure to provide for such conversion discriminates against her on the basis of her handicap.

The defendants, in contrast, contend that the Rehabilitation Act entitles Ms. Realbuto only to evenhanded treatment, not to substantial modifications of the State's civil service regimen. *See Alexander v. Choate,* 469 U.S. 287, 300–01 n. 20, 105 S.Ct. 712, 719–20 n. 20, 83 L.Ed.2d 661 (1985). They argue that nothing prevented her from taking the competitive examination and thereby winning a competitive appointment with concomitant benefits. Instead, according to defendants, she elected to pursue a position without taking the examination and now "she seeks the same benefits as those employees, both disabled and non-disabled, who obtained their positions through the competitive civil service process." *Id.* at 11.

Ms. Realbuto responds that her decision to pursue a noncompetitive appointment was neither informed nor voluntary, because the "defendants did not address the lack of the plaintiff's retention rights" under the Civil Service laws when she applied for the Senior Budget Analyst position in 1981. *See* Plaintiff's Memorandum of Law at 13 n. 6. Plaintiff, however, was well aware that she could take the competitive civil service examination—indeed she did just that when she first joined the State's work force. There is no dispute that Ms. Realbuto knew that the position she sought at OMRDD in 1981 would be reclassified as a "55–b" position, in the noncompetitive class. She simply elected to pursue the noncompetitive position and avoid the competitive examination.

In support of her claim that the denial of competitive bumping rights constituted illegal discrimination, Ms. Realbuto relies primarily on two decisions of the Court of Appeals for the District of Columbia Circuit resolving an analogous Rehabilitation Act challenge to the federal civil service "competitive" and "excepted" classes. *See Allen v. Heckler,* 780 F.2d 64 (D.C.Cir.1985); *Shirey v. Devine,* 670 F.2d 1188 (D.C.Cir.1982). Though these cases favor Ms. Realbuto's position, the Court does not find them persuasive.

In *Shirey,* a deaf NASA employee (Mr. Shirey) lost his job at NASA after that agency announced a reduction-in-force. Mr. Shirey originally secured the job without taking a competitive civil service examination because the federal Civil Service Commission "excepted" the position from the normal competitive appointment process under a provision analogous to Section 55–b of New York's Civil Service Law. Like Ms. Realbuto, Mr. Shirey ably served his employer despite his handicapping condition, and like Ms. Realbuto, Mr. Shirey was not permitted to "bump" or displace other employees in the competitive class.[4]

Mr. Shirey complained that the failure to provide him the same "meaningful job tenure protections and promotion opportunities afforded other employees" violated the Rehabilitation Act of 1973, specifically Section 501, as well as the Fifth Amendment's due process and equal protection clauses. *Shirey,*

---

4. There are, of course, differences between Mr. Shirey's bumping rights and Ms. Realbuto's bumping rights. For example, Mr. Shirey had no bumping rights, whereas Ms. Realbuto has the right to bump other noncompetitive employees. *See Shirey,* 670 F.2d at 1190 n. 5.

670 F.2d at 1190–92. The D.C. Circuit framed the issue there as follows:

> whether Section 501 permitted NASA to permanently deny Mr. Shirey the job benefits afforded his co-workers solely because he had been hired under excepted service authority, four and half years earlier, on account of the severity of his physical disability.

*Id.* at 1200. The State points out that the obligations of a federal employer like NASA differ from the obligations of a non-federal employer, like OMRDD, because the former has the statutory obligation to take "affirmative action" while the latter has only the obligation to make "reasonable accommodations."

The Supreme Court explained that "affirmative action" refers to "substantial" changes in programs or "fundamental alteration[s] in the nature of a program." "Reasonable accommodation," a more limited obligation, refers to the "elimination of existing obstacles against the handicapped." *Alexander*, 469 U.S. at 300–01 n. 20, 105 S.Ct. at 719–20 n. 20 (explaining *Southeastern Community College v. Davis*, 442 U.S. 397, 410–11, 99 S.Ct. 2361, 2369–70, 60 L.Ed.2d 980 (1979)). The State is correct in noting the difference between the duties of a federal employer under Section 501 [29 U.S.C. § 791], and a recipient of federal funds under Section 504 [29 U.S.C. § 794]. But accepting this distinction does not end the matter, it merely frames the issue.

The issue in the case is this: whether the State's failure to provide a mechanism for converting from non-competitive to competitive classification (without competitive examination) constitutes a discriminatory failure to provide a "reasonable accommodation" within the meaning of Section 504. It is a legal question upon which both motions for summary judgment depend.

The State argues that permitting Ms. Realbuto to take advantage of the bumping rights available to employees in the competitive class would constitute a "substantial" or "fundamental alteration" in the civil service program. In essence, Ms. Realbuto is asking the Court to rewrite the State's civil service laws to provide her with greater benefits

*because* she is handicapped rather than to provide her equal benefits *in spite* of her handicap. *See Flowers v. Webb*, 575 F.Supp. 1450, 1456 (E.D.N.Y.1983).

Ms. Realbuto claims discrimination because she is deprived of the same bumping rights that other employees enjoy even though she performs the same work with the same success. Though *Shirey* involved a federal employer, the D.C. Circuit nevertheless considered the reasonableness of the accommodation that Mr. Shirey sought when it described his injury:

> The unlawful discrimination in this case occurred when Mr. Shirey was kept in the excepted service long after the reason for keeping him in a separate employment category had expired. He was working alongside and performing the same tasks as competitive service employees, *and no expensive modification of his employment conditions was required.* His need for the benefits of competitive service status was certainly no less than that of his co-workers.

*Shirey*, 670 F.2d at 1203 (emphasis added). The D.C. Circuit reiterated this view in *Allen*, a case involving former mental patients serving in the excepted class of employees at St. Elizabeth's Hospital in the District of Columbia.

Although the majority opinions in *Shirey* and *Allen* favor Ms. Realbuto, the Court finds the dissenting opinions more persuasive. Judge Friedman, dissenting in *Allen*, noted that "[a]lthough the appellees might have obtained a classified position after their appointment by taking and passing the same competitive examination that other nondisqualified persons routinely take, they have not attempted to do so." *Allen*, 780 F.2d at 72 (dissenting opinion). Similarly, Judge Tamm, dissenting in *Shirey*, observed that the cause of Mr. Shirey's unequal benefits "was not the fact of his handicapped status but rather was his status as an excepted service employee." *Shirey*, 670 F.2d at 1208 (dissenting opinion).

These dissents express the difficulty that the Court has with Ms. Realbuto's argument. The State claims that it discriminated against

her based upon her failure to take the competitive examination, rather than on her handicap. She has not propounded evidence demonstrating that the Civil Service Law is a mere pretext.

The distinction that the Civil Service Law draws between employees who took the examination and those who didn't may seem unsound as a matter of policy, but the Rehabilitation Act does not give the Court the license to rewrite ill-considered State statutes, only to remedy discrimination based on an individual's disability.

Contrary to the majority's statements in *Allen* and *Shirey,* the Court finds that the change Ms. Realbuto seeks is not the sort of "reasonable accommodation" that the statute mandates. Reasonable accommodations are those that permit the employee to function as an employee. Under the regulation, a reasonable accommodation is an accommodation "to the known physical or mental limitations of an otherwise qualified handicapped individual" that will not "impose an undue hardship on the operation of [the recipient's] program." *See* 45 C.F.R. § 84.12(a). As examples of such accommodations, the regulations list changes directed at the person's disability, for example modifying facilities, equipment, scheduling, and providing readers and interpreters. *Id.* at § 84.12(b). The change that Ms. Realbuto seeks is of a different nature: it has nothing to do with her physical or mental limitations but rather with her classification as a noncompetitive employee.

The more pointed question is whether the competitive examination itself presents barriers to handicapped State job applicants. The Court would have to examine the nexus between Ms. Realbuto's handicap and the examination, an issue that she does not raise. Hypothetically, if Section 55-b provided the only means for handicapped persons to secure State employment, Ms. Realbuto might have a better argument.[5] The fact remains, however, that individuals with disabilities are free to take the competitive examination and,

under the Rehabilitation Act, the State has the duty to reasonably accommodate them by removing barriers in the examination process. Here, Ms. Realbuto does not claim that the State failed reasonably to accommodate her handicap by refusing to facilitate access to the examination process, nor does she claim that she sought to take the examination in 1981. Moreover, the defendants note that Section 55 of the Civil Service law accommodates handicapped persons who wish to take the examination (1) by furnishing examinees with an "amanuensis" or scribe who can assist them and (2) by allowing handicapped individuals additional time in which to take the examination. *See* N.Y.Civ.Serv. § 55.

Given the structure of the State's civil service system and the fact that Section 55-b provides an alternative avenue to State service, Ms. Realbuto has not demonstrated that she suffered discrimination "solely" on the basis of her handicap. From the differential benefits that she received based on her status as a § 55-b appointee, she asks the court to infer that she suffered discrimination based solely on her handicap. This inference asks too much of the Court. In deciding a motion for summary judgment, a court is not required to draw argumentative inferences in favor of the non-movant, only reasonable inferences.

Even if Ms. Realbuto had made out a *prima facie* case for discrimination, the State has satisfactorily demonstrated that it discriminated against her not on the basis of her disability, but on the ground that she did not take the competitive examination. Because Ms. Realbuto does not rebut this defense, but only disparages its validity in light of *Shirey* and *Allen,* the defendants are entitled to summary judgment dismissing the Rehabilitation Act claims.

### 2. *Equal Protection Claim*

In addition to the Rehabilitation Act, Ms. Realbuto invokes the equal protection clause.

---

**5.** If Section 55-b represented the State's only attempt at reasonably accommodating handicapped persons who cannot take the exam because of their disabilities, then the failure to provide full competitive benefits (including bumping rights) to handicapped individuals would unfairly discriminate against handicapped persons in violation of the statute. This case, however, does not present that set of facts.

The gist of this portion of her claim is that the State's classifications are irrational. The claim should not delay the Court for long.

■ The equal protection clause does not forbid the States from drawing distinctions between classes of people. Indeed, Courts routinely uphold classifications not involving immutable or suspect characteristics (e.g. race or gender) and classifications that do not burden fundamental rights, so long as the State offers a reason for the distinction. Here, handicapped citizens do not fall within one of the suspect classes and the classification does not trample upon a fundamental right. Moreover, a civil service classification that encourages prospective civil servants to compete through competitive examination is not irrational. Though the Court is inclined to agree that Ms. Realbuto should be treated the same as her colleagues in the competitive class, it is not willing to say that the Constitution requires this. In other words, the State has offered a legitimate reason for the discrimination, which is all that it must do.

3. *Due Process Clause*

■ Similarly, plaintiff's due process argument must fail. The Supreme Court has held that a person's protected interest does not spring from desire or want alone, but must find its origin in a positive source such as State law. Here, the State's civil service law clearly does not provide Ms. Realbuto with a protected interest in the benefits that her colleagues in the competitive class enjoy. The statute could not be more plain in this regard. Finding no protected interest in the retention rights that she claims, the Court must dismiss this portion of her complaint.

### CONCLUSION

As noted above, plaintiff cannot prevail on her claim under the Rehabilitation Act of 1973, the equal protection clause, or the due process clause. In addition, plaintiff has abandoned her claim under the Americans With Disabilities Act. Accordingly, the Court hereby grants the defendants' motion for summary judgment, denies plaintiff's cross-motion for summary judgment, and di-

rects the Clerk to enter judgment dismissing all claims in this action.

IT IS SO ORDERED.