OPINION OF THE COURT
Raymond E. Marinelli, S.
This CPLR article 78 proceeding came on to be heard by order to show cause (Prior, J.), dated July 11,1984, returnable on July 15, 1984.
The article 78 petition seeks an order requiring respondent, Schenectady County Department of Social Services (hereinafter referred to as DSS) to furnish petitioner, Mental Health Information Services (hereinafter referred to as MHIS) a copy of a certain show cause order served on J. R., a patient at the Capital District Psychiatric Center (hereinafter referred to as CDPC) in Albany, New York, on or about June 23, 1984, and further enjoining respondent, DSS, from serving legal process in the future upon said patient or any other patient in any psychiatric facility in this State without compliance with the provisions of 14 NYCRR 22.2.
At the time the article 78 proceeding was commenced, CDPC and the Office of Mental Health, though not parties to the proceeding, appeared by the Attorney-General and requested permission to make submissions in support of the instant application. Permission was granted.
The Office of Mental Health is an autonomous agency created pursuant to Mental Hygiene Law § 7.01 to develop an effective, integrated and comprehensive system for delivery of all necessary services to the mentally ill in the State of New York. *284 CDPC is a hospital facility located in the City of Albany, New York, and is one of the hospitals within the jurisdiction of the Office of Mental Health (Mental Hygiene Law § 7.17).
MHIS was created by statute in 1964. Its functions and responsibilities have since been expanded by statute and by administrative rule. Mental Hygiene Law § 29.09 (L 1972, ch 251; L 1976, ch 334) continued the Mental Health Information Services of the State in each judicial department of the Supreme Court and set forth and defined the scope of activities and responsibilities of the service.
On the return of the order, all parties agreed to waive their rights to a hearing and to be bound by their submissions in lieu thereof. Accordingly, the submissions before the court and to which consideration may be given, consist of the affidavit of David M. LeVine, sworn to July 11, 1984, attached to and in support of the order to show cause, dated July 11, 1984; the affidavit of Frank Tedeschi, sworn to July 25, 1984, submitted on behalf of respondent, DSS, and in opposition; the reply affidavit of David M. LeVine, sworn to August 1, 1984, with all attachments and exhibits in support of the application; and the affidavit of Barbara Rottier, Assistant Attorney-General, sworn to August 1, 1984, on behalf of the Office of Mental Health and in support of the application made by MHIS.
It appears from the submission that prior to June 25,1984, the patient, J. R., was confined at CDPC as a voluntary patient. At the time she was an infant over the age of 14 years.
The uncontroverted allegations indicate that prior to June 23, 1984, CDPC advised DSS of its intent to discharge the patient, J. R., from the CDPC facility on or about June 25,1984. On June 23, 1984, DSS secured an order to show cause (Griset, J., Schenectady County Fam Ct), directing said J. R. to appear in that court on June 25, 1984, for the purpose of allowing inquiry into the propriety of her discharge from CDPC. Unfortunately, this court was not favored with a copy of the show cause order made by Honorable G. Donald Griset, Schenectady County Family Court Judge, and does not have actual knowledge of the manner and method of service of process that was directed by the court.
The record is clear that an employee of DSS visited J. R. at the CDPC facility on June 23, 1984, and affected personal service upon J. R. of the order to show cause made and granted June 23, 1984 by Honorable G. Donald Griset. At the time personal service was made upon J. R., service of that order to show cause was not made on any other person, guardian or adult person *285 with whom J. R. was then residing, nor was any copy of the order provided to or served upon anyone in authority at CDPC. In consequence, neither CDPC nor petitioner, MHIS, had any knowledge of the proceedings in Schenectady County Family Court on June 25, 1984 until the conclusion thereof.
The patient did not report the service of the order to show cause to the authorities at CDPC. She was released from CDPC on or about June 25,1984, and did in fact appear in Schenectady County Family Court as directed by the order to show cause granted by Judge Griset.
Annexed to the submissions is a copy of an order made by Honorable G. Donald Griset, Schenectady County Family Court Judge, on June 25, 1984, directing that J. R. be remanded to CDPC for the purpose of conducting a psychiatric examination to determine the stability and propriety of her release from that facility and render a report to the court setting forth the findings and recommendations of the examining physicians at that facility.
Respondent, DSS, asserts that MHIS is not a proper party to the instant proceeding and is without standing therein; that the Commissioner of Mental Health lacks statutory authority to enact rules which implement or in any way modify the statutory method of service of process mandated by the Legislature and, in any event, the rules of the Department of Mental Hygiene (14 NYCRR 22.2) do not require service of process on MHIS in the instant case; that Family Court proceedings are confidential and as such respondent is required to abide by the principle of confidentiality of record by affecting service only upon those persons or agencies specified in Social Services Law §§ 136, 372 and 422.
MHIS asserts that service of legal process on J. R. and on other patients of psychiatric facilities should be made in conformity with 14 NYCRR 22.2. Further, that the rule is reasonable, that the Commissioner has the power and authority to make and enforce rules regulating conduct in facilities under his jurisdiction, and that it is a proper party to and has standing in this proceeding.
It is now conceded that prior to the return day of the instant application, respondent did provide petitioner with a copy of the show cause order served on J. R. on or about June 23,1984. For that reason, that part of the instant application requesting an order directing service of that order upon MHIS is now moot.
*286 At the outset the court must address respondent’s contention that petitioner, MHIS, is not a proper party to this proceeding and is without standing in this special proceeding.
Petitioner relies on Mental Hygiene Law § 29.09. Examination of this section discloses that MHIS has the specific obligation to “[investigate cases of alleged patient abuse and mistreatment * * * and may act as the legal representative of any patient who has not obtained other legal representation” (Mental Hygiene Law § 29.09 [b] [5]). As was stated in Besunder v Coughlin (102 Misc 2d 41, 43-44) “[i]t is apparent that the Legislature intended to provide a service for patients to protect their rights as against other governmental agencies and to insure that they are receiving adequate and proper care under the law.” MHIS is the agency charged with the duty of protecting patients’ rights where a violation thereof has occurred, is threatened, or can be reasonably anticipated, and where that violation will result in patient abuse, mistreatment or a denial of their legal or civil rights.
This court agrees that petitioner, MHIS, is a proper party to initiate this special proceeding.
“The office of mental health is charged with the responsibility for assuring the development of comprehensive plans, programs, and services in the areas of research, prevention, and care, treatment, rehabilitation, education, and training of the mentally ill.” (Mental Hygiene Law § 7.07 [a].) To be certain, the Legislature did not overlook the patient’s legal and civil rights, and provided, “The office of mental health shall have the responsibility for seeing that mentally ill persons are provided with care and treatment, that such care, treatment and rehabilitation is of high quality and effectiveness, and that the personal and civil rights of persons receiving care, treatment and rehabilitation are adequately protected.” (Mental Hygiene Law § 7.07 [c].) So that there would be no question of the authority and responsibility of the Commissioner of Mental Health, the statutory mandate provided, “The commissioner shall have the professional jurisdiction, supervision, and control of the office and all department facilities for the mentally ill.” (Mental Hygiene Law § 7.11 [a].)
To enable the Commissioner to carry out his statutory mandate, it was further provided, “The commissioner may adopt regulations necessary and proper to implement any matter under his jurisdiction.” (Mental Hygiene Law § 7.09 [b].) Thus the general parameters of responsibility of the Office of Mental Health are outlined by the Legislature.
*287 The reason for this broad mandate is obvious. The field of mental health and treatment is little known to those outside this discipline. In fact, those in the field readily admit that they are at a loss to explain the unpredictable actions and activities of some of those in their care.
It is apparent from the foregoing that the legislative policy was and is to allow the Commissioner of Mental Health the greatest latitude to determine how the best interests of those requiring care can be served.
Service of legal process on an individual undergoing treatment at a psychiatric hospital could have unpredictable and potentially dangerous reactions and have harmful psychological ramifications. To avoid possible adverse reactions, maintain stability, continuity of treatment and to protect the patients in such facilities from those who would come upon the premise of the facility without invitation, the Legislature saw fit to provide that the director of each facility shall maintain effective supervision of all parts of the facility and over all persons employed therein'or coming thereon and that he shall generally direct the care and treatment of the patients. {See, Mental Hygiene Law § 7.21 [a].) Thus, the Office of Mental Health, through the directors of the various facilities, was provided the means and authority to carry out the mandate set forth in Mental Hygiene Law § 7.07 (c).
The rule being challenged is 14 NYCRR 22.2. This rule sets forth certain conditions and requirements for the allowance of service of legal process on patients in State-operated psychiatric facilities. CDPC is such a facility. It requires that service shall not be permitted on any patient except on court order showing that the court, at the time of the granting of the order, was aware that the party to be served is a patient in a psychiatric facility. The rule further provides that the director of the facility or one of his assistants must be present when service of legal process is actually made upon the patient.
Mental Hygiene Law § 7.01 sets forth the general legislative policy and purpose of the State of New York in the care and treatment of those suffering mental illness. In short, it is to care for, treat and rehabilitate such patients. As has already been noted, service of process on a person undergoing psychiatric treatment can have extremely harmful effects and consequences. Under all circumstances, the patient and his interest must be paramount.-The patient must be protected from those who, to avoid the slight and temporary inconvenience of compliance with the rule, would serve a psychiatric patient with legal *288 process and care little for the mental condition of the patient and the ultimate consequences. The rule in question is an attempt by the Commissioner of Mental Health to protect the patient for whom he has responsibility from the possible irreparable harm which might result from unsupervised service of process on patients in the facilities over which he has jurisdiction. The rules are reasonable and have a legal and medical basis. In order to assure the patient due process, it is obvious that the court issuing the order and directing the method and manner of service be made aware that the party to be served is a patient in a psychiatric facility. If this fact is not recited in the order, how then can the facility or the director thereof be certain that the court was aware the patient was a resident of the facility at the time the order was signed?
The assertions that CPLR 309 provides for the method of personal service upon an infant is correct. However, 14 NYCRR 22.2 is not an abrogation of CPLR 309, nor does it repeal the statute enacted by the Legislature. They are separate but complementary procedures prescribed to be followed for the purpose of affecting personal service upon an infant residing at CDPC in accordance with CPLR 309 and to permit the Commissioner and in particular, the director of a psychiatric facility, to provide for the care and treatment of its residents and to further protect their civil rights by establishing rules for those entering upon the premises of a psychiatric facility. 14 NYCRR 22.2 simply sets forth the conditions under which the person serving process shall be admitted upon or into the facility to accomplish the actual service of process in accordance with CPLR 309.
The status of a party as a patient in a mental health facility necessarily raises the level of protection the courts must provide with regard to the preservation of an individual’s civil rights. This court, therefore, finds the requirement to be reasonable and necessary to insure the protection of the patient’s legal and civil rights.
Although respondent contends that 14 NYCRR 22.2 does not require service of process on MHIS, it does provide for
“[a] copy of the process served, together with a copy of the court order, must be filed in the patient’s record and an additional copy of such papers must be given to each of the following * * *
“(2) the Mental Health Information Service * * *
“The director or officer in charge is responsible for distribution of the legal papers served upon the facility and/or the patient.” (14 NYCRR 22.2 [b].)
*289 Accordingly, there must be compliance with 14 NYCRR 22.2 by all persons coming into or upon the facility.
Respondent further claims the provisions of Social Services Law §§ 136, 372 and 422 as to confidentiality of records of DSS and the Family Court Act as to confidentiality of proceedings therein are a bar to compliance with 14 NYCRR 22.2. However, careful examination of the cited sections of the Social Services Law and the Family Court Act shows that the primary purpose of such provisions is protection of the civil rights and legal interests of the subject person. The obvious purposes of the provisions of 14 NYCRR 22.2 are to provide such protection. Compliance with the rule can hardly defeat or be considered contrary to the legislative intent expressed in the Social Services Law and the Family Court Act.
More importantly, examination of the sections and the Family Court Act show the prohibition against disclosure of records and sensitive information concerning the individual as well as the substance of proceedings is the matter about which confidentiality is sought. Here, the rule requires only “[a] copy of the process served, together with a copy of the court order” be served on the facility with additional copies to be distributed by the personnel of the facility. It is difficult to ascertain how the service of a copy of the “process” and “court order” could constitute a breach of those sections of the Social Services Law or the Family Court Act requiring confidentiality. The court therefore finds this contention of respondent to be without merit.
Of overriding concern is the obvious legislative intent, recited in Mental Hygiene Law § 29.09 (b) (2), (3), (4) and (5) that the patient’s civil rights be protected in all cases. The only feasible way to accomplish this clear legislative mandate is compliance with 14 NYCRR 22.2. In this regard it is duly noted that the rule does not require service of any supporting papers or depositions — only the legal process and the order are required to be served. The obvious and only purpose for this requirement is to allow for notice to those having the care, physical custody and responsibility for the well-being of the patient and the protection of the patient’s rights that some proceeding is pending which can or will effect the patient’s civil rights. This court therefore concludes that compliance by respondent with 14 NYCRR 22.2 will not constitute a breach of Social Services Law §§ 136, 372 or 422 or any of the provisions of the Family Court Act concerning confidentiality of records or proceedings.
The court must now address the question of whether petitioner has presented a proper case for the permanent injunctive *290 relief requested. Injunctive relief will be granted only where there is imminent danger of irreparable harm and injury unless such a judgment is entered and there is no adequate remedy at law.
Petitioner asserts the rule is reasonable and necessary and seeks injunctive relief to prevent future violations of the rule by Schenectady DSS. Respondent claims the rule is unreasonable, without statutory authority and in violation of other statutory provisions relating to service of process.
The petitioner, fulfilling its statutory mandate, has appeared for and on behalf of J. R. The undisputed fact that J. R. was a patient at CDPC at the time of service of legal process upon her certainly gives rise to at least an inference that she was suffering some degree of disability and emotional instability. The court can and does take judicial notice that service of legal process on a person suffering emotional instability can cause such person irreparable harm and further emotional upset for which no money damages could adequately compensate such person.
Petitioner alleges that “on January 29, 1984, counsel for respondent, Schenectady DSS, stated to your affiant that Schenectady DSS will not comply with 14 NYCRR 22.2 when serving patients in psychiatric hospitals.” This statement is not denied by respondent and therefore must be accepted for the import thereof.
Thus, there is a clear showing of irreparable harm, lack of adequate legal remedy and the threat of further harm to J. R. as a result of the failure of DSS to comply with 14 NYCRR 22.2.
While it may be true that the same unfortunate consequence may befall other patients as a result of similar actions by respondent or others, the court cannot make a judgment or determination on issues not before it. Further, there is no evidence in the record that petitioner appears for or has commenced a proceeding on behalf of any patients except J. R.
Accordingly, it is the determination of this court that while J. R. remains a patient at CDPC, respondent hereafter be enjoined and restrained from affecting service of any legal process on J. R. without compliance with 14 NYCRR 22.2
Petitioner’s request to enjoin respondent from serving legal process on any other patient in a psychiatric facility without compliance with 14 NYCRR 22.2 is denied.