*829 OPINION OF THE COURT
John M. Leventhal, J.
Defendant moves this court to inspect the Grand Jury minutes and to dismiss various counts of indictment number 9823/97 on several grounds including legal insufficiency. Defendant also claims that certain counts are duplicitous, provide insufficient notice, and are too vague. Defendant moves to dismiss three counts of criminal contempt in the second degree on the ground that he had not been served with any order of protection on the days of the alleged violations. The People oppose defendant’s motion to dismiss.
The court has considered defendant’s motion, the People’s affirmation in opposition and the Grand Jury minutes.
Background
Defendant was arrested on July 21, 1997 and charged in a felony complaint with several counts each of criminal contempt in the second degree, aggravated harassment in the second degree, harassment in the second degree and attempted coercion in the second degree. At the time of his arraignment on the felony complaint, the defendant did not file notice of his intention to testify before the Grand Jury. Defendant was subsequently indicted by the Grand Jury for grand larceny in the second degree, grand larceny in the fourth degree, aggravated harassment (24 counts), criminal contempt in the second degree (3 counts), harassment in the second degree (2 counts), attempted coercion in the first degree, attempted coercion in the second degree, and menacing in the second degree.
According to the Grand Jury testimony, these charges arose out of numerous incidents occurring between August 1996 and July 1997. Beginning in August 1996, the defendant, 44, was living with his 77-year-old mother, the complainant in this case. He lived with her until June 26, 1997. Defendant’s mother gave the defendant an allowance on a weekly basis while he was living with her. This allowance was given reluctantly, and allegedly coerced through threats and physical intimidation by the defendant. On June 26, 1997, the complainant went to the Supreme Court’s Mental Hygiene Part in King’s County to have her son involuntarily civilly committed. Defendant was subsequently picked up on a mental hygiene warrant and taken to Coney Island Hospital.
The following day, June 27, 1997, the complainant obtained a temporary order of protection in Family Court from Judge *830 Paul R. Grosevenor, pursuant to article 8 of the Family Court Act. There is nothing to indicate that the complainant informed the Family Court that the defendant was in a psychiatric ward pursuant to a court order.
Between June 27th and July 2nd, while the defendant was in the hospital, the complainant allegedly received three threatening and harassing phone calls from the defendant. Over the next two weeks she received another phone call from him every few days, totaling 13 calls.
Protective Order: Knowledge of Contents and Service
The defendant argues that the three counts of criminal contempt in the second degree should be dismissed as he was not served with any order of protection until July 21, 1997, the day of his release from the hospital. The defendant maintains that any of the acts for which he is charged during his stay in the hospital do not violate the order. The prosecution has offered no evidence indicating that the defendant was ever served with the June 27, 1997 order of protection. The order itself makes no indication that it was ever personally served. Parenthetically, in the discovery provided, the complainant’s notes demonstrate that she was informed by the police that the protective order had not been served as hospital personnel removed the officers when the service was attempted. This does not end the court’s inquiry, as service is not an essential element of the crime of criminal contempt in the second degree.
In the Grand Jury minutes, the complainant suggests that the defendant knew about the order of protection (“He said he had not accepted any Order of Protection and that he did not have to accept any document until — unless he was pronounced competent”). Even prior to the 1994 amendments to the Penal Law affecting criminal contempt in the first degree (L 1994, ch 222, § 47), the Court of Appeals had required that under criminal contempt in the second degree (Penal Law § 215.50 [3])[1] it is “not enough * * * to simply inform a defendant that ‘an order’ has been issued, without also telling the defendant, either orally or in writing, the contents of the order and the conduct it prohibits” (People v McCowan, 85 NY2d 985, 987). When, however, one has been informed of a protective order’s existence and contents, this knowledge is sufficient to support a charge of criminal contempt, even though the or *831 der itself has not been served (People v McCowan, 85 NY2d, at 987, supra). In this case, the mother’s testimony, which implies that the defendant may have known of the existence of the order of protection, is insufficient to show that he knew of the contents of the order of protection, or any specifics at all.
As no evidence was presented before the Grand Jury that the defendant knew of the contents of the subject protective order, the contempt charges must be dismissed.
Proper Procedure
Having found that the defendant had never been informed of the contents of the June 27, 1997 protective order, the three counts of criminal contempt in the second degree must be dismissed. The court nonetheless wishes to clarify the proper procedure to be employed when service of an order of protection is sought to be issued against and served upon a person who is in a hospital or psychiatric facility, either voluntarily or involuntarily. The court makes this pronouncement as it recognizes that it is not uncommon for those accused of elder abuse or violence against an intimate partner to suffer from psychological/psychiatric ailments or disorders.
This court finds that, even assuming that defendant had been served, service of the protective order would be ineffectual as a matter of law and against public policy under the particular circumstances herein. This situation raises the interesting issue about the propriety of the issuance and service of a protective order on someone who currently is being treated in a psychiatric hospital for a purported mental illness.
A person cannot be served while a mental patient in a hospital unless the court issuing the order has been informed that the recipient is a patient at a hospital (14 NYCRR 22.2 [a];[2] see also, Mental Hygiene Law art 9). Furthermore, when it is alleged that a person has a mental deficiency, a court should make a determination whether a guardian ad litem should be appointed (CPLR 1201, 1203). A guardian ad litem will be appointed if the court determines that the defendant was judicially determined to be incompetent, or if he is incapable of adequately prosecuting or defending his rights (CPLR 1201). *832 The order of protection shown to this court does not indicate in any respect that the Family Court was informed of the location of the defendant’s involuntary psychiatric admission at the time the order was issued, nor does it indicate that the question of whether a guardian ad litem should be appointed was ever addressed. This demonstrates to this court that the proper procedure was not followed in accord with applicable regulation and statute.
Although the defendant in the matter sub judice, “may” have been informed about the existence of an order of protection, and assuming arguendo that he knew of its contents by service contrary to the articulated procedure set forth by statute and rule, the issuance and service would be nonetheless ineffectual as against public policy (14 NYCRR 22.2 [a]).
14 NYCRR 22.2 sets forth conditions under which legal process can be served on a patient while under the care of a hospital. This rule serves to protect people who are incapable of adequately prosecuting or defending themselves (CPLR 1201; Matter of Mental Health Information Servs. v Schenectady County Dept. of Social Servs., 128 Misc 2d 282). Furthermore, it protects patients from the possible adverse effects that service of a legal notice during treatment could produce. As those outside the mental health arena are unfamiliar with the workings of psychiatric treatment and care, this rule allows the Director or care giver in these facilities, as well as ordinary hospitals, to maintain control over the premises and protect patients from the unwelcome intrusion of those trying to serve legal notice (Matter of Mental Health Information Servs. v Schenectady County Dept. of Social Servs., supra). Moreover, it allows the Director of such a facility to insure that service has been made, and requires that a record be maintained of the paper served, as well as any court order, and mandates that it be placed in the patient’s file and a copy given to the State Attorney-General’s office and the Mental Health Information Service (14 NYCRR 22.2 [b]).
This rule puts the burden on the party seeking the order to inform the court of the defendant’s current residence. Due to the sensitive nature of persons undergoing psychiatric treatment, the patient and his interests must be paramount (Matter of Mental Health Information Servs. v Schenectady County Dept. of Social Servs., supra). As the complainant herself was responsible for her son’s placement in Coney Island Hospital, it is not an unreasonable burden for her to be required to inform the Family Court that he had been hospitalized, as well as the *833 present location of her son when seeking the order of protection. This rule is applicable to the service of most legal papers,[3] and is applicable even to creditors who are aware of someone’s inability to protect his own legal interest (Barone v Cox, 51 AD2d 115, 118). Thus, it would be an injustice if this court were to permit a family member to have a relative committed, and then be permitted to serve process without following proper procedure. One can imagine the potential abuses that would occur if courts were to allow the mandated procedures to be circumvented.
Under the circumstances of this case, even assuming arguendo that the People had been able to demonstrate that the defendant was served with the protective order, contempt would not lie, as the issuance of the order and the service thereof was contrary to law and against public policy as noted above. One cannot infer from the evidence before the Grand Jury that the defendant’s mother, a party to the Family Court proceeding, served defendant herself. Nonetheless, some courts have held service by a party to be merely irregular (Matter of Schodack Concerned Citizens v Town Bd., 148 AD2d 130; Matter of Sullivan v Albany County Bd. of Elections, 71 AD2d 959; Matter of Kandel v State Div. of Human Rights, 70 AD2d 817; CPLR 2001),[4] while other courts, including the Second Department, have found this service to be fundamentally defective in violation of CPLR 2103 (a)[5] (Miller v Bank of N. Y., 226 AD2d 507; Matter of Professional Fire Fighters Assn., Local 274 [Bridgham—City of White Plains], 187 AD2d 433; Matter of Kedzielawa v Smolinski, 133 AD2d 517; Matter of Wein v Thomas, 78 AD2d 611, affd 51 NY2d 862; see especially, Matter of Beverly E. v William H., 53 AD2d 891 [since the Family Court summons was personally served by petitioner, petition of *834 paternity was dismissed despite an admission by the respondent of being the father of the child in the proceeding]).[6]
The court need not distinguish whether service was merely irregular or in fact jurisdictionally defective, as no evidence of any service upon the defendant has been shown. For this very reason, the court would not need to determine whether a defendant would be excused from obeying an order of protection based on a defect in service (see, People ex rel. Stearns v Marr, 181 NY 463; Daly v Amberg, 126 NY 490 [irregular service does not excuse defendant’s failure to obey court’s order of injunctive relief!).
Absent an adherence to the procedure articulated in 14 NYCRR 22.2 and the safeguards contained in CPLR 1201 and 1203, the very issuance of the order of protection, as well as its service, are inherently suspect. The court wishes to use this opportunity to give notice that, due to the number of mentally ill defendants who come through this court, the proper procedure for issuance and service of an order of protection set forth in 14 NYCRR 22.2 is to be followed in the future.
This court finds that the defendant was not notified of the contents of the protective order, nor was he properly served pursuant to 14 NYCRR 22.2 (a). Thus, the three counts of criminal contempt in the second degree are hereby dismissed.
Duplicity and Specificity
The defendant moves this court to dismiss one or both of the grand larceny counts on the grounds that they are duplicitous. Each count of an indictment may only charge one offense (CPL 200.30 [1]). Where an offense is made out by the commission of one act, that act must be the only offense alleged in that count of the indictment (People v Keindl, 68 NY2d 410). A count which charges more than one offense is duplicitous and must be dismissed (People v Davis, 72 NY2d 32, 38; People v Keindl, supra, at 417-418, 423). Even if a count is not facially duplicitous, it can be rendered duplicitous by Grand Jury testimony, a bill of particulars or trial testimony that indicates that the charge includes more than one act per count (see, People v Beauchamp, 74 NY2d 639, 640-641; People v Jiminez, 239 AD2d 360; People v Corrado, 161 AD2d 658, 659). On the other *835 hand, an offense that is a continuing crime which is made up of more than one act is not rendered duplicitous even though the count charges more than one act (People v First Meridian Planning Corp., 86 NY2d 608, 615-616; People v Keindl, supra, at 421).
In this case, each count of the indictment only charges a single crime. The charges of grand larceny in the second degree and grand larceny in the fourth degree which charge the defendant with a series of acts are not duplicitous because they are continuing crimes (see, People v Keindl, supra, 68 NY2d, at 421-422).
The defendant also maintains that the nine-month time period, as articulated in the indictment, is too broad and denies him due process and an opportunity to prepare a defense. The Grand Jury testimony, however, reveals that the alleged acts occurred on a weekly basis. This is proper notice and legally sufficient especially when the allegation stems from the forcible demands for a “weekly” allowance. If the People have a more definitive time frame it should be submitted at the earliest possible opportunity, and certainly before trial.
Grand Jury Notice
The defendant maintains that the People’s failure to notify him that larceny by extortion, a crime uncharged in the felony complaint, would be presented before a Grand Jury denied him of his right to testify under CPL 190.50.
The court has put on the record that the Grand Jury notice and presentation was proper even though the defendant was not notified that charges other than those contained in the felony complaint would be presented before the Grand Jury (People v Mateo, NYLJ, May 15, 1998, at 34, col 1).
Legal Insufficiency
The court, having read the Grand Jury minutes, finds that the evidence adduced before the Grand Jury was legally sufficient to establish the finding of each and every count of the indictment, except the three counts of criminal contempt in the second degree.
It is for a jury to determine whether the defendant, during the time he allegedly committed these acts while in the hospital (June 26-July 21, 1997), had the mental capacity to form the requisite intent to be guilty of the crimes for which he has been indicted.
The Assistant District Attorney correctly charged the Grand Jury with respect to the applicable law.
*836 Accordingly, the defendant’s motion to dismiss the indictment is denied except the three counts of criminal contempt in the second degree are hereby dismissed as discussed above. The defendant’s motion to dismiss one or more counts of grand larceny on the grounds of duplicity, lack of specificity and proper notice is denied.

. The facts in McCowan (supra) concerned contempt under Judiciary Law § 750 (3). The provisions of this section mirror that of criminal contempt in the second degree, under Penal Law § 215.50 (3).

. The rule provides in pertinent part that “The director or officer in charge of a facility shall not permit the service of any legal process upon any patient except upon an order of a New York State court of record or of a Federal court, which order shows that the court had notice of the fact that the person sought to be served was on the date of the order a patient at such facility.” (14 NYCRR 22.2 [a].)

. 14 NYCRR 22.2 (a) does not apply to: (1) citations issued by the Surrogate’s Court for probate of wills, letters of administration and for final accounting; and for appointment of guardians for mentally retarded persons; or (2) notice of petition for appointment of a committee conservator, and notice of final accounting of committee or conservator.

. CPLR 2001 provides that, “At any stage of an action, the court may permit a mistake, omission, defect or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded.”

. CPLR 2103 (a) provides in pertinent part that except where otherwise prescribed by law or order of court, papers may be served by any person not a party of the age of 18 or over.

. Family Court Act § 167 provides that if a defendant appears in court after an order has been allegedly served, the appearance acts as a conclusive presumption of service. In the instant case, as the defendant had never appeared in Family Court, this conclusive presumption of valid service did not apply.