RALPH DIAMOND et al., Respondents, v MARIO CUOMO, as Governor of the State of New York, et al., Appellants, et al., Respondents.

Second Department, October 1, 1987

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Lawrence S. Kahn* and *Arnold D. Fleishner* of counsel), for Mario Cuomo and others, appellants.

*Henry J. Logan, County Attorney (Kenneth E. Powell* and *Frank Marocco* of counsel), for Westchester County Board of Elections, appellant.

*Giaimo, Vreeburg & Rosen (Joseph O. Giaimo* of counsel), for plaintiffs-respondents.

*Michael Colodner (John Eiseman* and *Ann T. Pfau* of counsel), for Albert M. Rosenblatt and another, respondents.

### OPINION OF THE COURT

Per Curiam.

NY Constitution, article VI, § 25 (b), provides for the mandatory retirement of certain members of the judiciary at the age of 70. This provision has already withstood a constitutional challenge premised upon the argument that such discrimination against Judges over 70, on the basis of their age, lacks a rational basis and thus offends the Equal Protection Clause of the Fourteenth Amendment of the US Constitution

(US Const 14th Amend; *see, Maresca v Cuomo,* 64 NY2d 242, *appeal dismissed* 474 US 802). In the *Maresca* case, the Court of Appeals identified several logical reasons for this age-based limitation. Nothing has occurred during the few years since *Maresca* was decided which would, in any way, tend to detract from the cogency of those reasons or otherwise call into question the analysis or the result reached in that case. Nevertheless, the plaintiffs-respondents now strenuously argue that *Maresca* "no longer applies", because, effective January 1, 1987, certain Federal legislation, addressed to a nationwide concern with age discrimination in employment practices, was amended to, according to an interpretation by New York's Administrative Board of the Courts,[1] in effect, remove from the scope of New York's mandatory retirement rule those Judges who are appointed rather than elected to office *(see,* Pub L 99-592, § 2 [c] which expanded the scope of the Age Discrimination in Employment Act of 1967 to cover employees over 70 years of age; *see also,* 29 USC § 630 [f], which exempts from the scope of that law all elected, but not all appointed State officials). We conclude that this circumstance does not affect the continued vitality of the holding of the *Maresca* court that New York's traditional policy of requiring certain Judges to retire at the age of 70 is fully consistent with constitutional principles of equal protection. We view as unfounded any argument that New York must entirely set aside its historical rule requiring certain Judges to retire at 70 solely because, under the purported command of Federal legislation, a relatively small percentage of such Judges (approximately 18%) have been exempted from the scope of that rule. We therefore are of the opinion that the plaintiffs' renewed constitutional attack on the mandatory retirement provisions of NY Constitution, article VI, § 25 (b) is without substance.[2]

---

1. The Administrative Board of the Courts consists of the Chief Judge of the State of New York and the Presiding Justices of the Appellate Divisions of the Supreme Court *(see,* Judiciary Law § 210 [2]).

2. That the members of this court may be affected by the outcome of this appeal does not call for recusal. This case involves not only the constitutionality of a statute, but also an interpretation of the NY Constitution, and thus no direct appeal lies to the Court of Appeals *(see,* CPLR 5601 [b]). Since this tribunal has exclusive jurisdiction at this stage of the proceedings to review the questions involved herein, under the rule of necessity *(see, Matter of Morgenthau v Cooke,* 56 NY2d 24, 29, n 3; *Maresca v Cuomo,* 64 NY2d 242, 247, n 1), we are required to hear this appeal.

I

Each of the five plaintiffs in this action is an elected Judge. The plaintiff Benjamin F. Nolan, a Judge of the Civil Court of the City of New York, Bronx County, and Barbara Kaiser, a Judge of the Family Court, Westchester County, both reached 70 years of age this year and thus will be compelled to retire on December 31, 1987, by virtue of the provisions challenged herein, although in each case their elected terms would not otherwise expire until December 31, 1992. The plaintiff Benjamin Glass, a Justice of the Supreme Court, Queens County, is 76 years old, and has been certified three times for continued service beyond age 70 pursuant to Judiciary Law § 115. He, too, must retire on December 31, 1987, when his current, and final, two-year certification expires. The remaining two named plaintiffs, Samuel Greenstein of the Civil Court of the City of New York, Kings County, and Ralph Diamond of the Family Court, Nassau County, are age 65 and 68, respectively. Judge Greenstein's term of office expires on December 31, 1989, at which point he will be 67 years of age, and, absent the mandatory retirement provisions, he would be eligible to run for reelection for a term of 10 years commencing January 1, 1990, and expiring December 31, 1999. Judge Diamond's term, absent mandatory retirement provisions, would expire on December 31, 1995. In 1985, Judge Diamond was appointed Supervising Judge of the Family Court, Nassau County, and continues to serve in that capacity.

On July 16, 1987, the plaintiffs commenced this action seeking, *inter alia,* (1) a declaratory judgment that NY Constitution, article VI, § 25 (b), Judiciary Law § 23, and the opinion and finding of the Administrative Board of the Courts that elected Judges must involuntarily retire from office upon reaching age 70, are violative of the plaintiffs' due process and equal protection rights under the US Constitution, and (2) a permanent injunction enjoining the defendants from causing their involuntary retirement by reason of age. On July 23, 1987, the defendants Mario Cuomo, Edward V. Regan, the New York State Employees' Retirement System and the Policemen's and Firemen's Retirement System (hereinafter the State defendants) cross-moved to dismiss the complaint and for a declaration that the challenged provisions are constitutional. The defendant New York State Office of Court Administration appeared and indicated that it would not participate in the action but noted on the record that it objected to the

granting of a preliminary injunction against it. The defendant Westchester County Board of Elections took no position with respect to the merits of the complaint, and stood ready to comply with any order of the court. It appeals from so much of the order and judgment as failed to specify how it should proceed with the election of Judges of the Family Court, Westchester County.

In a memorandum decision dated September 3, 1987, the Supreme Court, Kings County (Morton, J.), held, *inter alia,* that the challenged provisions had no rational basis and were violative of the plaintiffs' constitutional rights. By order and judgment dated September 14, 1987, Justice Morton granted the plaintiffs' request for declaratory relief and denied the State defendants' cross motion to dismiss the complaint.[3] The instant appeal ensued.[4]

## II

Initially, we note the obvious discrepancy which exists between the nature of the arguments advanced by the plaintiffs in this case and the nature of the relief which they actually seek. The plaintiffs seek a judicial declaration that NY Constitution, article VI, § 25 (b), as well as Judiciary Law § 23 are unconstitutional as applied to them. In support of this claim, the plaintiffs argue that an invidious discrimination has been created between *appointed* Judges over the age of 70, and *elected* Judges over the age of 70, the effect of which is to require members of the latter class to retire prematurely while members of the former class may remain on the Bench regardless of age. The fundamental flaw in this argument, however, is rooted in the simple fact that the State constitutional and statutory provisions which the plaintiffs would have us strike down contain no such distinction. The only relevant statute which does draw any distinction based on the criterion of whether a particular State official holds his office by election or by appointment, is 29 USC § 630 (f). This

---

3. The parties have stipulated before this court that they consented to the entry of a final judgment by the Supreme Court, Kings County, even though the motion pending before it at the time was merely one for a preliminary injunction.

4. No appeal has been taken by the plaintiffs; hence, we do not review whether the Supreme Court, Kings County, properly denied their motion for the certification of a class action. In any event, the plaintiffs have indicated at oral argument that they accept the determination of the Supreme Court in this regard.

statute, however, is *not* challenged by the plaintiffs, and so is beyond the scope of our review. Analytical clarity nonetheless will best be served by addressing, at the outset, whether the legal distinction contained in that statute between elected State officers and appointed State officers comports with established principles of equal protection of the laws. We are of the opinion that it does.

The Federal Age Discrimination in Employment Act of 1967 (Pub L 90-202, § 2; 81 US Stat 602; 29 USC § 621 *et seq.)* has as its principal purpose the prevention of "arbitrary age discrimination in employment" (29 USC § 621 [b]). Under the terms of 29 USC § 623 (a) (1), it is made illegal for an employer to "discriminate against any individual * * * because of such individual's age". The definition of the term "employee" found in 29 USC § 630 (f) is broad enough to include many State employees. In the context of this appeal, we need not decide whether this exercise of power by the Federal Government over the States so as to limit their ability to define the qualifications of their own employees is itself unconstitutional *(see generally, Equal Employment Opportunity Commn. v Wyoming,* 460 US 226). We observe, however, that it may well have been as part of an effort to avoid such constitutional problems that the drafters of the Federal age discrimination law chose to exempt certain *elected* State officials from its scope.

29 USC § 630 (f) defines the term "employee" as follows: "(f) The term 'employee' means an individual employed by any employer *except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof,* or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision. The term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country" (emphasis supplied). On this appeal, we need not and do not decide whether this provision exempts from the scope of Federal law only elected Judges, and not appointed Judges. This is so, because the Administrative Board of the Courts, based on its construction of this provision, has determined that only

elected Judges are exempted, and no party to this action urges us to adopt a different construction.

The classification of State and local officers into elective and nonelective categories which is entailed in 29 USC § 630 (f), is founded upon a reasonable basis. The distinction made in that law is not between appointed Judges and elected Judges; rather, it is a distinction between all elected State officers generally, as opposed to all nonelected State officers. The Congress may well have considered that, in general, important decisions in the exercise of State powers or in the formulation of State policies are more often made by elected State officers, including those in the legislative or executive as well as in the judicial branches of government, than by appointed officers in each branch. Based on this consideration, the Congress could certainly have determined that established notions of comity between the State and Federal Governments would be more offended by direct congressional regulation of elected State or local officials than by similar regulation of appointed State or local officials. It is obvious therefore that the distinction recognized in the Federal age discrimination law between those State or local officials who are elected and those who are appointed is rational.

It may well be that this distinction in the Federal age discrimination law between elected State or local officers and appointed State or local officers is particularly ill-suited to a particular class of officer, i.e., Judges. It may well be that in several States the nature of a particular judicial office as elective or appointive bears little or no relation to the importance of that office. In New York, for example, members of our highest court are appointed by the Governor (see, NY Const, art VI, § 2 [e]), so that the general premise that the more important State offices tend to be filled by election rather than appointment is not borne out in this one particular application. However, we do not think that a reasonable criterion which is used to make valid legal distinctions should be considered irrational solely because in one particular application it may fail to accomplish the purpose which, when applied generally, the criterion in fact achieves. More to the point, the rational basis for distinguishing elected from appointed officials should not be considered irrational solely because, as applied to certain (but not necessarily all) Judges in New York State, that criterion may fail to accomplish the result it was designed to achieve, i.e., the protection of more important State offices from Federal regulation. "[I]t is of no

constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification [e.g., some elected New York Judges] as it is with respect to the classification as a whole [e.g., all State or local officials nationwide]" *(New York City Tr. Auth. v Beazer,* 440 US 568, 593, citing *Matthews v Diaz,* 426 US 67, 83-84).

The Congress's attempt to exempt from Federal age discrimination regulation various more important State and local offices, by defining an exempt class consisting of all elective, rather than appointive State or local offices, does not, and cannot, achieve perfect results. As is well illustrated in the context of this State's judicial system, certain elective offices may, in general, be less important than certain appointive ones. However, this does not render the classification arbitrary. The line drawn by the Congress may be imperfect without being unconstitutional *(see, Vance v Bradley,* 440 US 93, 108; *Phillips Co. v Dumas School Dist.,* 361 US 376, 385; *San Antonio School Dist. v Rodriguez,* 411 US 1, 51). A legislative classification "does not offend the Constitution simply because the classification 'is not made with mathematical nicety' " *(Dandridge v Williams,* 397 US 471, 485, quoting from *Lindsley v Natural Carbonic Gas Co.,* 220 US 61, 78). In short, the distinction made in 29 USC § 630 (f), between those State or local officers who are elected and those who are appointed is indubitably a rational one.

### III

Accordingly, we reject the plaintiffs' argument that the distinction made in 29 USC § 630 (f), between elected State or local officials and appointed State or local officials is, as applied to them, unconstitutional. It is appropriate, at this point, to revert to our earlier observation that this argument has, in any event, no bearing whatsoever on the validity of the actual provisions of law (NY Const, art VI, § 25 [b]; Judiciary Law § 23) which the plaintiffs challenge. We again express our inability to follow the argument that certain otherwise valid provisions of New York State law must be set aside solely because of an allegedly invidious distinction made in an unrelated Federal law. Assuming, for the moment, that the plaintiffs, as members of a class consisting of elected Judges, had a valid argument that they have been subjected to invidious discrimination, it would seem to us that their quest for judicial relief should have involved a challenge to the source

of that discrimination, i.e., the Federal law referred to above, upon the premise that the distinction contained in that law is, as applied to them, irrational.

What has possibly led our dissenting colleague into disagreement is the evidence in this record that certain elected Judges in the State of New York occupy positions which, in all respects, are identical to those occupied by other appointed Judges. It is suggested that as the result of the interplay between Federal law (29 USC § 630 [f]) and State law (NY Const, art VI, § 25 [b]; Judiciary Law § 23), the elected Judges are afforded less favorable treatment than their similarly situated appointed colleagues, and that this situation conclusively shows that a violation of equal protection has occurred. The remedy for this supposed violation of the Equal Protection Clause, according to our dissenting colleague, would be to enjoin the defendants from enforcing the provisions of NY Constitution, article VI, § 25 (b), even though it is conceded that the provisions of State law are valid.

We gather that the position actually being advocated in the dissent is that the distinction between elective and nonelective State officers, contained in 29 USC § 630 (f) is, as applied to all elected Judges, unconstitutional, and that all elected Judges must therefore be treated under Federal age discrimination law as though they were appointed. Federal law would then entirely preempt NY Constitution, article VI, § 25 (b), so that the injunctive relief called for in the dissent would be warranted.

This analysis, of course, assumes that we have the power to invalidate part of a Federal statute (the exemption from age discrimination law applicable to elected State Judges), even though the plaintiffs do not request such relief. Further, this analysis fails to explain why the Federally created distinction between elected and appointed officers should be held unconstitutional as applied to *all* elected Judges, even though it is clear that not all elected Judges can be described as comparable to any particular class of appointed Judges. Supreme Court Justices, for example, cannot, as a class, point to any group of appointed Judges who could be viewed as holding similar positions. Thus, the application of 29 USC § 630 (f) to this particular subclass of elected Judges does *not* result in a disparate treatment of "similarly situated" Judges.

It might be argued that the distinction between elected and appointed officials contained in 29 USC § 630 (f) could be held

unconstitutional as applied to those elected Judges who *can* identify a group of "similarly situated" appointed Judges. However, even this argument is flawed since it fails to take into account the fact that the result complained of—the disparate treatment of supposedly identically situated persons —is *not* caused by the presence, in any of the provisions of law under review, of any invidious distinction; rather, this result is caused by the historical and political circumstance in New York that, in certain cases, some Judges of certain courts are elected, while other Judges of the same court are appointed.

For example, Family Court Judges within the City of New York, are appointed, while Family Court Judges outside the city are elected *(see,* NY Const, art VI, § 13 [a]). However, the fact that New York's constitutional scheme for distinguishing between those judgeships that are to be filled by election and those that are to be filled by appointment follows no immediately discernible pattern does not furnish a basis upon which to condemn certain distinctions that are in fact rationally based, which are found elsewhere in New York or Federal law.

Thus, while we appreciate that, for example, a Family Court Judge from Westchester, approaching the age of 70, may feel aggrieved by application of the mandatory retirement provisions of New York law, even as colleagues in the City of New York are exempt from similar treatment, we cannot remedy this injustice by invalidating provisions of law which, in and of themselves, are not offensive to the US Constitution. The real source of the injustice claimed herein is not in the constitutional and statutory provisions which the plaintiffs challenge, but rather, in the seemingly random provisions of the NY Constitution governing which judicial offices are to be elective and which are to be appointive. If all judgeships in this State were appointive, or if all judgeships in this State were elective, it would be clear that the provisions of law now under review would not be subject to any equal protection attack.

## IV

For the reasons outlined above, we conclude that the relief requested by the plaintiffs in this action was improperly granted, and that the order and judgment under review should be reversed insofar as appealed from by the State defendants, a declaration made in the State defendants' favor,

and the complaint otherwise dismissed. While the evidence in the record suggests that an inequitable situation may exist with respect to certain of our judicial colleagues, this inequity cannot be traced to the provisions of law which the plaintiffs would have us declare invalid.

In light of our determination, the appeal by the Westchester County Board of Elections should be dismissed as academic.

THOMPSON, J. P. (concurring in part and dissenting in part). I cannot agree with my learned colleagues in the majority that the posture in which the instant matter is presented before us serves to deprive the plaintiffs of a remedy which would adequately address the profoundly unreasonable and inequitable application to them, as elected Judges in New York State, of a recent amendment to the Federal Age Discrimination in Employment Act (hereinafter the ADEA) (29 USC § 621 *et seq.*). The ADEA provision, as amended, bars employment discrimination against individuals within its coverage who have attained the age of 40 years or older. By the inclusion within the protected class individuals who have reached the age of 70 years or older, the ADEA is placed in direct conflict with the New York State constitutional and statutory provisions (NY Const, art VI, § 25 [b]; Judiciary Law § 23) which mandate the retirement of Judges at the age of 70 years. I believe the majority correctly determines the validity of NY Constitution, article VI, § 25 (b) and Judiciary Law § 23, and I would, therefore, reverse so much of the order and judgment appealed from as declared those provisions to be unconstitutional. However, I strongly believe that the application of the ADEA, as interpreted by the New York State Administrative Board of the Courts in a formal opinion to exclude from the ADEA's protections elected Judges in New York State, has no rational basis and is a conspicuous denial of equal protection of the laws to these plaintiffs. Therefore, I would enjoin the State from compelling the plaintiffs' involuntary retirement by reason of age pursuant to the State's mandatory retirement provisions. To the extent that the majority opinion runs contrary to this conclusion, I respectfully dissent.

The operative facts of this matter are fully set forth in the opinion of the majority and need not be duplicated here. Suffice it to say that the key issue, as crystallized by the parties' contentions, is whether the exclusion of the plaintiffs from the class protected by the ADEA amendment lacks a

rational basis and thus offends the Equal Protection Clause of the Fourteenth Amendment of the US Constitution.

In order to place this matter in historical perspective, any discussion of this issue must begin with the seminal case of *Maresca v Cuomo* (64 NY2d 242, *appeal dismissed* 474 US 802) in which the Court of Appeals determined that both Judiciary Law § 23 and NY Constitution, article VI, § 25 (b) requiring certain Judges of the State to retire at age 70 was rationally related to some or all of seven enumerated State interests. Since the court, pursuant to traditional equal protection analysis, found the age limitation contained in the challenged provisions of this State's constitutional and statutory law to have a rational basis, it rejected a constitutional challenge premised upon both due process and equal protection grounds. While *Maresca* may have continued vitality with respect to the State's mandatory retirement provisions, the effects of the recent amendment to the Federal ADEA upon the plaintiffs at bar takes the instant matter outside the simple analysis employed in *Maresca*. Therefore, contrary to the views expressed by the majority, the *Maresca* holding is not an absolute bar to the fashioning of a remedy for these plaintiffs.

Prior to January 1, 1987, the ADEA barred employment discrimination against individuals between the ages of 40 and 70, thereby having no impact upon New York's mandatory retirement legislation. However, effective January 1, 1987, the ADEA was amended so as to remove the upper age limit, thus affording protection to covered employees who have simply met the lower age requirement of 40.

Following the ADEA's amendment, the New York State Administrative Board of the Courts (hereinafter the board) construed the Federal ADEA, as amended, to prohibit the mandatory retirement at age 70 of appointed State Judges during their terms of office, but to offer no similar protection to elected State Judges. The board's interpretation is founded upon 29 USC § 630 (f) which provides as follows: "(f) The term 'employee' means an individual employed by any employer except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil

service laws of a State government, governmental agency, or political subdivision. The term 'employee' includes any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country". The exemption provided for persons elected to public office created a distinction between elected and appointed Judges which lies at the heart of the instant challenge. On or about May 26, 1987, the Chief Administrative Judge of the New York Office of Court Administration, Albert M. Rosenblatt, a named defendant in this action, notified Judges throughout the State of the formal opinion of the board.

I would note that neither the majority nor any party to this action seriously disputes the preemption of this State's mandatory retirement provisions with respect to appointed Judges. Although it has been administratively determined that the Federal ADEA, as amended, supersedes the mandatory retirement provisions of the NY Constitution and the New York State Judiciary Law to the extent that they conflict,* this issue has never been litigated and hence, there exists no formal declaration by any court of law regarding the preemption of this State's mandatory retirement provisions with respect to appointed Judges. However, insofar as a conflict is clearly created by the plain language of the ADEA as amended, we are constrained by the Supremacy Clause of US Constitution article VI to acknowledge the conflict between Federal and State law, to employ the provisions of the Federal ADEA, and override the provisions of the State law to the extent of any conflict (see, City of Burbank v Lockheed Air Term., 411 US 624; Hines v Davidowitz, 312 US 52).

The majority's position and, indeed, that of the defendants, is that to the extent the State's mandatory retirement policy has not been preempted by the ADEA, the State is free to implement that policy, assuming it is otherwise valid. To that end, the majority rests upon the declaration in Maresca v Cuomo (supra) of the validity of New York's mandatory retirement provisions, and claims that "[n]othing has occurred

---

* In addition to the recent opinion and findings issued by the New York State Administrative Board of the Courts, the Equal Employment Opportunity Commission (hereinafter EEOC) has likewise issued an opinion as to the applicability of the ADEA to appointed State and local court Judges. The EEOC concluded that appointed State and local court Judges are "employees" within the definition of that term as found at 29 USC § 630 (f), and that the exemptions set forth therein would not generally be applicable to an appointed State or local judgeship.

during the few years since *Maresca* was decided which would, in any way, tend to detract from the cogency of those reasons [for the age-based limitation] or otherwise call into question the analysis or the result reached in that case". I vigorously disagree with this position since the mandatory retirement policy at issue in *Maresca* is not the issue with which we are faced on this appeal. In *Maresca,* the court determined that there was a rational basis for the mandatory retirement age limitation as it applied to *all* State Judges; in the instant case, we are confronting a State policy which requires that all elected Judges retire at the age of 70, while permitting their appointed counterparts to complete their judicial terms well beyond the age of 70. It is this policy, the validity of which the majority apparently believes is not properly before us, that I find to be irrational and lacking a rational basis necessary to withstand equal protection analysis. Nor do I believe that we should avoid passing on this issue on the basis of a hypertechnical analysis of the Federal ADEA as interpreted in the formal opinion of the board which gave voice and substance to a new State policy on age discrimination with respect to the State's Judges.

When reviewing a statute or constitutional provision under the rational basis test, the law will be upheld if it is found that there exists a rational relationship to a permissible State interest *(see, Dandridge v Williams,* 397 US 471). However, even under a rational basis standard, disparate treatment of those similarly situated will not be tolerated without justification *(see, Johnson v Smith,* 696 F2d 1334; *Flowers v Webb,* 575 F Supp 1450). In this regard, if the group to which the plaintiffs belong is similarly situated to the group receiving the benefit to which they claim entitlement, then a rational reason must exist for the disparity *(see, Vance v Bradley,* 440 US 93; *Eisenstadt v Baird,* 405 US 438).

In the matter before us, I do not believe that the narrow distinction as to whether a Judge is elected or appointed is sufficient to justify the disparity in their treatment. Elected and appointed Judges perform the identical job, handle a caseload of equal magnitude, drawing the same salary and compensation, and are held to the same standards of judicial responsibility. In this regard, I find no rational State interest whatsoever in the unequal treatment of members of our State judiciary who function in identical capacities.

The irrationality of this State's policy permitting enforcement of New York's mandatory retirement rule as against

elected Judges while exempting, by reason of the Federal ADEA, those Judges who are appointed, is evidenced by the unfairly disparate treatment accorded Family Court Judges within the City of New York (who are appointed to their judgeships) from their counterparts sitting as Family Court Judges outside New York City (who are elected to their judicial posts). Merely because of geographic factors, the New York City Judges may serve well beyond the age of 70, while their similarly situated colleagues outside New York City are summarily forced to step down at age 70.

Equally irrational is the proposition that an appointed lower court Judge, who is designated and serves as an Acting Supreme Court Justice, would be permitted to remain on the Bench beyond the age of 70 without going through any certification process, while an elected Supreme Court Justice would be forced to retire at age 70, with only the possibility of serving for a limited term as a retired Justice providing he or she is certified.

Such disparate treatment of identically situated individuals may not be discounted, as the majority suggests, as simply an aberration of our structured system of the judiciary in which certain Judges are elected and some are appointed. Nor may such inequities as exist be explained by the *Maresca* decision upholding New York's mandatory retirement policy. In fact, this pattern of injustice in the State's retirement policy is particularly disturbing when viewed in the light of the *Maresca* court's language that the very reason for permitting certification of Supreme Court Justices and not lower court Judges (pursuant to Judiciary Law § 115) was to insure the retention of experienced judicial personnel in the Supreme Court. Thus, what originated as a system under which elected Supreme Court justices could ostensibly sit on the Bench beyond their appointed counterparts, has evolved into a system under which appointed lower court Judges could ultimately remain on the Bench well beyond the years of their elected colleagues.

Turning then to the rationale underlying the distinction between officials who are appointed and those who are elected, I do not dispute the majority's assertion that such distinction arises by operation of Federal law. However, I strongly doubt that the exemption for elected officials, which was carved out in a 1974 amendment to the ADEA *(see,* Pub L 93-259, § 28 [a] [4]) was ever intended to foster such a blatantly inequitable result as that with which we are now faced.

Although "[t]he legislative history behind the [1974] amendment to the ADEA is virtually nonexistent" *(see, U.S. Equal Employment Opportunity Commn. v County of Calumet,* 686 F2d 1249, 1252), the language in 29 USC § 630 (f) is identical to that contained in title VII of the Civil Rights Act of 1964, as amended in 1972 (42 USC § 2000e [f]). Consequently, the legislative history of that 1972 amendment to title VII may appropriately be considered here in establishing legislative intent *(see, Lorillard v Pons,* 434 US 575; *Equal Employment Opportunity Commn. v Board of Trustees,* 723 F2d 509).

The exemption of elected officials from the definition of the term "employee" in title VII was intended in part to preserve the right of the voters of a State "to elect their own officials and select their own employees" without restriction by the Federal Government *(see,* 118 Cong Rec, at 4483 [Feb. 17, 1972]). A review of the Congressional Record discloses no intention whatsoever that this exemption was intended to sanction age discrimination against elected officials only.

In sum, while I concur in the majority's finding that NY Constitution, article VI, § 25 (b) and Judiciary Law § 23 are constitutional, I conclude that the application of the Federal ADEA, as amended in January 1987 and as interpreted in the formal opinion of the board, are patently violative of the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the US Constitution.

BRACKEN, BROWN, LAWRENCE and SPATT, JJ., concur; THOMPSON, J. P., concurs insofar as it is declared that NY Constitution, article VI, § 25 (b) and Judiciary Law § 23 do not violate the plaintiffs' rights under the US Constitution to due process of law and equal protection of the laws, but otherwise dissents and votes to affirm the denial of the cross motion, and to modify the order and judgment appealed from by declaring that the Federal Age Discrimination in Employment Act (29 USC § 621 *et seq.),* as interpreted by the New York State Administrative Board of the Courts, violates the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the US Constitution, and enjoining the State from compelling the plaintiffs' involuntary retirement by reason of age pursuant to the State's mandatory retirement provisions.

Ordered that the order and judgment is reversed insofar as appealed from by the appellants Cuomo, Regan, the New York State Employees' Retirement System and the Policemen's and

Firemen's Retirement System, on the law, without costs or disbursements, and the cross motion of those appellants to dismiss the complaint is granted to the extent that it is declared that NY Constitution, article VI, § 25 (b) and Judiciary Law § 23, do not violate the plaintiffs' rights under the US Constitution to due process of law and equal protection of the laws; and it is further

Ordered that the appeal by the Westchester County Board of Elections is dismissed as academic, without costs or disbursements, in light of our determination on the appeal by the appellants Cuomo, Regan, the New York State Employees' Retirement System and the Policemen's and Firemen's Retirement System.